**LOUISIANA HIGHWAY COMMISSION v. WATKINS et al.**

No. 5395.

Court of Appeal ·of Louisiana. Second Circuit.

Feb. 5, 1937.

John T. Campbell, of Minden, for appellants.

Edward R. Stoker, of Baton Rouge, for appellee.

DREW, Judge.

The Louisiana Highway Commission instituted this suit alleging it was preparing to construct an overpass over and across the L. & A. Railroad in the parish of Webster, and that the contract had been awarded and is known as Project WPGH 116–A, McIntyre Overpass, State Route No. 4, and

when it is completed will constitute a component part of the Minden-Shreveport Highway; that, in order to construct said project in a manner and mode conducive to the public interest, convenience, and safety, it is necessary to acquire by expropriation the following described property owned by A. C. Watkins and Mrs. A. C. Watkins, to wit:

"That certain piece of property beginning at a point that is south 291.6 feet from the northwest corner of that certain 3-acre tract of land acquired by A. C. Watkins and Mrs. A. C. Watkins by a deed recorded on October 2, 1934, in Conveyance Book 99, Folio 127, of the Conveyance Records of Webster Parish, said point being the intersection of the west line of said tract with the north right of way line of the McIntyre Overpass Project on the Minden-Shreveport Highway, State Route No. 4; thence south 78.27 feet to the southwest corner of said tract; thence east along the south line of said 3-acre tract a distance of 216.88 feet to the south right of way line of said McIntyre Overpass Project; thence north 37 degrees 45 minutes east along the south highway right of way line a distance of 140 feet, more or less, to the east line of said 3-acre tract of land; thence south along the east line of said tract 301.14 feet to the north right of way line of the McIntyre Overpass Project, Minden-Shreveport Highway, State Route No. 4; thence south 37 degrees 45 minutes west 450 feet, more or less to the point of beginning.

"Said tract of land or parcel of land containing 1.643 acres, and being located in Section 36, Township 19 North, Range 10 West, Webster Parish, Louisiana."

It further alleged the above-described property was necessary for the work and purpose of petitioner to enable it to properly fulfill its function in behalf of needed improvements, and that it could not agree with defendants, owners of said land, to make an amicable purchase thereof; therefore it is necessary to expropriate the same by judgment of the court. It prayed for a jury of freeholders to try the case and fix the value of the property to be expropriated.

Defendants in answer denied the necessity alleged for expropriating said property. They admitted ownership of a tract of land embracing three acres, which includes that which the Highway Commission is attempting to expropriate; that they bought this land for the purpose of erecting a building thereon to be used for commercial purposes, and had erected a building thereon; and that the construction of the overpass as located will entirely destroy the value of their property for any purpose and will damage them in the sum of $1,900. They prayed that plaintiff's demands be rejected, and, in the alternative, if the expropriation is found to be necessary, they be awarded damages to said property and to themselves in the sum of $1,900.

After trial below, the jury returned a verdict which was approved by the court in the amount of $665, itemized as follows:

Land ......................... $165.00
Damage to remainder of property $500.00
_____
$665.00

From this judgment defendants have appealed and pray that the amount of the award for damages be increased to the sum of $1,400. Plaintiff did not appeal, and in this court contends that the amount awarded is correct and the judgment should be affirmed.

The defendants have abandoned their contention that there was no necessity for the expropriation of their property, and therefore the only question for determination here is the amount of damages to which they are entitled.

Several years prior to the filing of this suit, defendants purchased three acres of land from E. L. Stewart for the sum of $300. The land is located about four miles west of the city of Minden on the Minden-Shreveport Highway. The 3-acre plot lies between the paved highway leading from Minden to Shreveport and the L. & A. right of way, and is only about one-fourth of a mile from the village of McIntyre. The highway crosses the L. & A. tracks at a point three or four hundred yards west of this plot of land. The 3-acre plot is adjacent to and fronts on the highway. After the completion of the overpass, the highway will turn to the left, leaving the present highway at a point 700 feet east of defendants' land, and will again connect the present highway in the village of McIntyre and west of the present railroad crossing; the purpose of the overpass being to abolish the present crossing of the railroad by the highway. In order to completely do away with the crossing, the record shows that the present highway will be destroyed and made impassable

from a place east of the present railroad crossing to a point west of it, where the road leading to the overpass will leave the present highway turning to the right when traveling on said highway in an easterly direction. The paved highway on which defendants' property fronts will not be disturbed for a distance of several hundred yards west of their property, but will be left to serve a few houses located on it which are east of the railroad crossing and west of defendants' property. The paved highway in front of defendants' property will be a blind road ending two or three hundred yards west of their property. It cannot be used for through traffic from Shreveport to Minden, or vice versa. All such traffic will be diverted from its present course, which is in front of defendants' property, and will traverse the overpass behind and to the east of defendants' property.

The property was purchased by defendants solely for commercial purposes and, in accordance with their expressed intentions at the time of purchase, they had erected a tile building having a composition roof thereon. The building is 30x40 feet, and all it lacked of completion was the laying of the floor, installing the windows, and hanging the doors. The record discloses that defendants intended to use it as a filling station, sandwich shop, and saloon, and erect tourist cabins on the grounds. The right of way taken by the Highway Commission entered the 3-acre plot a little south of the northeast corner and continued diagonally across it, leaving the plot at the southwest corner, which is about the center of the highway. The amount of land actually taken by the Highway Commission is 1.643 acres. In the southeast corner of said plot there is left a small tract of land which measures 0.114 acres, which is entirely separated from the land left in the northwest corner by the highway, consisting of an embankment 15 or 16 feet high. This small tract of land in the southeast corner has been rendered worthless for any purpose. We therefore find that the land actually taken by the highway and this small tract left in the southeast corner of the plot amount to 1.757 acres, leaving of the original 3 acres, 1.243 acres.

Defendants' 3-acre tract is bounded on the east, west, and south by land owned by E. L. Stewart, and the record discloses that the right of way of the overpass intersected Stewart's property on all three sides, a very small part of which fronts on the present highway, but all of which will front on the highway after the overpass is completed. For this land of Stewart's in the proposed highway, he was paid $175 per acre by the Highway Commission. It is not difficult to see that defendants' property, fronting on the highway, was more valuable than that acquired from Stewart. The record also discloses that the other property purchased in this locality consisted of one-fourth of an acre, at $140 per acre base, 2 acres at $137.50 base, and, from the testimony of plaintiff's employee engaged in securing the right of way, the average price paid was $150 per acre. None of the land purchased, other than the Stewart land, adjoined defendants' property, and it is not shown that any of it fronted on the present highway.

On this evidence the jury allowed defendants damages for the land actually used in the highway the amount of $100 per acre, or $165. We are reluctant to disturb a finding of land value by a jury of freeholders, and will not do so, unless the record discloses its finding to be clearly erroneous. We are convinced the finding is erroneous as to the worth of the land taken and totally destroyed of value for any purpose.

The Highway Commission does not complain of the price it paid Stewart for the adjoining land nor does it suggest that it was overcharged by Mr. Stewart. The record likewise shows that when defendants purchased the 3 acres of land, prices were at a low ebb and that since that time the value of land has appreciably increased. Defendants' land has at least the same value as that bought from Mr. Stewart, and we fix an estimate of $175 per acre for the land actually taken or destroyed of value, amounting to 1.757 acres, or a sum of $307.47.

The record makes it certain that the building as it is or would be if completed is not fit for use, other than that for which it was built or for a mercantile establishment. It also shows to a certainty that the construction of the overpass and the destruction of the present highway, so that it can no longer be used by through traffic, have rendered the building almost, if not entirely, worthless; and the small amount of land left, even if it were on a highway, would not be desirable for a tourist camp.

There is much conflicting testimony as to the value of the building as it stands,

and the record shows that it would cost as much to demolish it and salvage the material as the salvaged material would be worth.

Mr. Stanley, a carpenter, estimated the cost of the building at the time it was put up at $760.

Another witness for plaintiff, Mr. Gus Zietz, also a carpenter, figured the roof on said building would cost $375, and to rebuild the house as it stood at the time of trial would take from $1,200 to $1,300.

Mr. Collier, a right of way agent for plaintiff, appraised the total cost of the building at the time it was built to be $674: He also testified that the price of building material, labor, etc., had advanced 25 per cent. since this stucture was erected, which would make his appraisal of the cost to build on the day of trial $842.50.

Mr. Irwin, a nearby resident, fixed a value of $600 on the house and 3 acres of land. He made no estimate as to the expense of building, but thought the value of the property after the overpass was erected would be about $100.

Mr. Leslie Johnson, a resident of McIntyre and a dealer in building materials and general merchandise, figured the cost of the building, less the cement and gravel, which he did not estimate, was $874.74 at the time it was constructed. If we should add 25 per cent. for the increase in prices since the structure was built, not including the roof, which was put on in 1936, we would have the amount of $1024.74, which would be required to build the house at the time of trial.

Melvin Jones, a carpenter, estimated the cost of the structure as it stood on the day of trial to be $1,200, that being the amount it would take to duplicate it.

Mr. Kierbow, a carpenter and building contractor, calculated that at the time of trial it would require from $1,200 to $1,300 to duplicate the building.

The estimate made by Mr. Stanley is incorrect, for the reason that it is shown by positive evidence that the price of the roof on said structure was far in excess of the appraisal he made as to that item of expense.

However, when we take the estimates of all the witnesses, including that made by Mr. Stanley, and strike an average, we find the price of duplicating the structure at the time of trial or when suit was filed would be $1,005.44, and from all the tes-timony we think these figures are as nearly correct as it is possible to arrive. The 1¼ acres of land on which it is located are no longer desirable for commercial purposes since the construction of the high dump adjacent thereto and the destruction of the present highway as a through highway; and it is undesirable for residential property, due to its location. The value of same for any purpose has been greatly reduced by the construction of the overpass. It is true that the building could be converted into a residence; however, the expense would be great. The floor, which is now near the ground, would have to be raised and changed and the entire structure altered and partitioned into rooms. However, it has some value.

If we calculate the cost of the building at $1,005.44 and the value of the 1¼ acres of land at $175 per acre, before the construction of the overpass, we have an estimation of $1,224.19, and the evidence clearly shows there has been a depreciation of at least two-thirds of its value by the construction of the overpass, or a damage to defendants of $816.12.

Plaintiff contends that the testimony of Mr. Irwin, who offered defendants $600 for the property when he learned the overpass was to be erected, should be accepted as the true worth of same at that time. The other testimony in the record establishes that the estimation placed on the property by Mr. Irwin is entirely out of line with the true value of it then; however, if we should accept his testimony as to depreciation caused by the overpass, we would be forced to allow defendants a larger amount of damages than we have found to be due them, for the testimony of Mr. Irwin is to the effect that the property before the overpass was built was worth $600, and only $100 afterwards, or that the depreciation in value of the entire property caused by the overpass will be five-sixths of its former worth. However, the percentage of depreciation fixed by him is more nearly correct than the original value of the property as fixed by him.

Under all this testimony, we reluctantly find that the award of damages made by the jury does not do justice to defendants and same will be increased from $665 to the sum of $1,123.59, itemized as follows:

1.757 acres of land, at $175 per acre ......................... $307.47
Damage to remainder of property $816.12

It is therefore ordered, adjudged, and decreed that the judgment of the lower court be amended by increasing the amount awarded defendants from $665 to $1,123.59, and as so amended the judgment be affirmed; all costs to be paid by appellee.