147 So.2d 80 (1962)
STATE of Louisiana, through the DEPARTMENT OF HIGHWAYS, Plaintiff-Appellant,
v.
Eugene H. LUMPKIN, Jr., Defendant-Appellee.
No. 9768.
Court of Appeal of Louisiana, Second Circuit.
October 26, 1962.
On Application for Rehearing November 29, 1962.
*81 D. Ross Banister, Glenn S. Darsey, Braxton B. Croom, Ben C. Norgress, Robert J. Jones, Baton Rouge, for plaintiff-appellant.
Graydon K. Kitchens, Minden, for defendant-appellee.
Before HARDY, GLADNEY and AYRES, JJ.
AYRES, Judge.
This is an action wherein the State, through the Department of Highways, acquired by expropriation 18.699 acres of defendant's property, in full ownership, as a right of way for highway purposes and a servitude on an additional area of 8.781 acres for a borrow pit. Pursuant to estimations made by its appraisers, the State deposited in the registry of the court the sum of $8,104.00 and obtained an order of expropriation. For the property taken and for severance damages to the remainder of defendant's property, defendant sought recovery of an additional sum of $38,516.00.
Based upon its findings as to the value of the property taken in full ownership and of that upon which a servitude was granted, together with damages sustained by such taking, defendant was awarded judgment in the sum of $23,197.00, representing valuations and damages itemized as follows:

 Land taken in full ownership
 for a right of way ---------------- $ 3,800.00
 Fences destroyed -------------------- 447.00
 One walnut tree destroyed ----------- 100.00
 One-half acre drainage easement ----- 100.00
 Severance damages to 25 acres
 remaining of defendant's
 property -------------------------- 3,750.00
 Dirt taken from borrow pit ---------- 15,000.00

From a judgment rendered and signed in accordance with the above findings, the State prosecutes a devolutive appeal. An answer to the appeal has been filed by the defendant praying that the award be increased to the sum of $40,059.50, or, in the alternative, to the sum of $25,059.50.
We may note, first, for consideration, plaintiff's attack upon the qualification of the two experts tendered by defendant *82 and used by him in establishing the evaluation of his property and in the estimation of the damages sustained by him.
One of these appraisers was J. Weston Miller, who had 18 years' experience with a local bank and 20 years' experience with a local savings and loan association. With these institutions, he had considerable experience in appraisal work. Moreover, he was a long-time resident of Minden, near which the property expropriated was located. The other of defendant's witnesses was Mrs. Katie Drew Carey, a life-long resident of Minden, who had been, for a period of time exceeding 10 years, engaged in the real estate business. In the conduct of her business, as reflected by the record, it was required that she appraise and evaluate property. Both witnesses were actively engaged in their respective businesses at the time of trial.
These witnesses, we conclude, were intimately qualified to appraise and evaluate the property herein involved and with which they were familiar. State Through Dept. of Highways v. Milam, La.App.2d Cir., 1961, 130 So.2d 145. Moreover, these witnesses fulfill the particular requirement that appraisers, in such actions as this, be "* * * familiar with land values in the vicinity of the property to be taken." LSA-R.S. 48:443. We, therefore, conclude that the testimony of all the experts was properly considered in determining the award as made in the instant case.
In giving consideration to the testimony of all these experts, whether testifying on behalf of the State or of the defendant, we find ourselves in general accord with the findings of the trial court as to the first five of the items hereinabove noted.
The evaluation of the property taken and the damages sustained by the taking are factual questions which, in this instance, we deem require a brief review of the appraisals. The witnesses for the State were O. L. Jordan and Lawrence L. May, both residents of Shreveport. Both concluded that the use to which defendant's property was adapted, and to which it might be put to the best advantage, was for improved pasture or farming. For these purposes, the property was, in their opinion, basically worth $100.00 per acre. A slight but inconsequential difference between $1,868.00 and $1,900.00 is noted in their appraisals of the property taken for right-of-way purposes. This was, obviously, due to a disregard of fractions, and in approximating acreage and in rounding the figures to the nearest hundreds.
Jordan concluded that the property, before the taking, had a valuation of $10,544.00. This, he found from his appraisal of the land at $1,868.00, the fences at $279.00, the borrow pit servitude at $1,450.00, and the severance damages to the remainder of plaintiff's property, consisting of 25 acres, at 50% of its value, or $4,199.00. His estimation of defendant's loss for which he should be compensated was $7,796.00.
May concluded that plaintiff's property, before the taking, had a value of $10,992.00, and concluded that plaintiff's compensation should be in the sum of $8,399.00. This conclusion is predicated upon the finding that the land taken for right-of-way purposes had a value of $1,900.00; the fences, $447.00; the walnut tree, $100.00; and severance damages to the property remaining, as aforesaid, of 50%, or $4,339.00. A valuation of $1,450.00 was placed on the borrow-pit servitude. An additional $113.00 was estimated by him as damages, because of erosion, to a strip of land surrounding the pit and to that portion lying between the excavation and the Dubberly Road. A half-acre drainage servitude was valued at $50.00.
On behalf of the defendant, Miller appraised the land taken for right-of-way purposes at $350.00 per acre, or the sum of $6,650.00. A value of $4,050.00, at the rate of $450.00 per acre, was placed on the borrow pit. An additional $2,250.00 was allowed by him for erosion around the pit and between the pit and the Dubberly Road. *83 The 25 acres remaining in the tract, access to which had been severed by the taking of this right of way, were valued by Miller, before the taking, at $150.00 per acre. He declined to estimate its present worth, but indicated it was worthless due to its inaccessibility. However, he estimated the cost of a roadaccess-to this property at $2,000.00.
Both Miller and Mrs. Carey were familiar with plaintiff's property and knew that it was pasture land except a portion covered by pine timber. The value of the servitude for the borrow pit was, in their opinion, enhanced by a natural gas line that crossed that area. Mrs. Carey was of the opinion that that portion of defendant's property fronting Dubberly Road had a valuation of $500.00 per acre, and that the land otherwise taken for the right of way had a value of $350.00 per acre, as did the 25 acres for which severance damages were sought. This was predicated, more or less, upon a possible future use of the property for subdivision development. Mrs. Carey estimated the damage caused by the pit at $2,000.00 and the erosion of the land surrounding it at $1,250.00. In its present condition, the 25-acre tract was said, by her, to be worthless.
We may point out that the record is barren of any showing of an intention on the part of the defendant to subdivide or to develop the property as a subdivision, or that he had any plans for that purpose. Such a suggestion now is only a remote possibility and is without substantial basis or merit. Nor is there any showing that the property was acquired, or held, for subdivision purposes.
Without the allowance of severance damages to the 25-acre tract, Miller's appraisal of defendant's loss was $14,950.00 and Mrs. Carey's, $14,400.00.
In summarizing its findings and conclusions, the trial court stated:
"* * * Under the circumstances $200.00 per acre is a fair value for the almost 19 acres taken from this defendant for right of way or a total of $3,800.00. Since the 25 acres in the northeast corner was admitted to be without access and since it was valued the same as the right of way land by all appraisers except Mr. Miller, the Court values it at $200.00 per acre and considers the severance damage to be 75% or $3,750.00. To these should be added the $447.00 for fences admittedly taken by the State, according to Mr. May, and the $100.00 allowed by him for the walnut tree. Not considered in the original appraisal was the one-half acre drainage easement for which an allowance of $100.00 is considered adequate."
With the aforesaid conclusions, we find no sound, substantial basis for disagreement.
Of primary importance and concern to both the State and the defendant is the evaluation of the servitude granted upon the area for a borrow pit. Plaintiff contends that the appraisal should be governed by the value of the land according to the best use and advantage to which it may have been put, that is, for pasture or farming land. The defendant's position is that compensation therefor should be based upon the dirt taken therefrom at its market value of 10 cents per cubic yard.
In support of its position, the State relies, for authority, upon the following cases: State of Louisiana Through Dept. of Hys. v. Glassell, 226 La. 988, 77 So.2d 881; State Through Dept. of Highways v. Ponder, La.App. 1st Cir., 1962, 140 So.2d 426 (writs denied).
The defendant relies upon this case: State Through Dept. of Highways v. Hayward, La.App. 1st Cir., 1962, 142 So.2d 832.
It may be appropriate to observe that the State desired a servitude on the property designated therefor together with the right to excavate and remove therefrom earth materials, notably fill dirt, with, of course, the right of ingress and egress to and from said pit. No issue has been *84 raised as to the State's right to expropriate a servitude for a borrow pit covering the property herein concerned. The authority therefor is contained in LSA-R.S. 48:222.
In the Glassell case, the court allowed compensation for the servitude and for the removal of dirt taken from the property on the basis of an evaluation of the property taken. In that connection, the court observed:
"Forasmuch as defendant is being given the full value of the land used for a borrow-pit, we think that this sufficiently compensates him not only for the value of the dirt taken therefrom in the construction project but also for any and all damages, actual or conjectural, which he may thereafter sustain as the consequence of the excavation in this area." (Emphasis supplied.)
The holding in the Glassell case was followed in the Ponder case by the Court of Appeal for the First Circuit. In the latter case, the court made an observation, appropriate to the situation here, when it stated:
"Defendants urge strongly that the compensation for the borrow pit should be based upon the cost price of dirt removed rather than upon the value of the acreage taken. The trial court stated that it allowed this evidence only in the hope that it might throw some light upon the value of the acreage as a whole. However, the trial court concluded that it received little assistance from this evidence and would therefore disregard it. We find no merit to the argument that damages are to be assessed in cases of this nature by the value of the fill taken from the borrow pit. In State of Louisiana through the Department of Highways v. Glassell, 226 La. 988, 77 So.2d 881, 885 (1955), the Supreme Court affirmed the lower court's allowance of full acreage price for a borrow pit. The court pointed out that since the dirt from that area would be removed to a depth of ten feet, the tract would have no practical value to the defendant who used the plantation principally for pasturage and farming. * * *" (Emphasis supplied.)
Defendant, however, as heretofore stated, relies upon the pronouncements made by the Court of Appeal for the First Circuit in the Hayward case. That case, we think, is readily distinguishable from the instant case. The opinion discloses the Department of Highways was engaged with a highway project in Ascension Parish in which it was necessary to use a certain type of river sand as a foundation. Representatives of the Highway Department took soil borings in the area to discover the location of the appropriate type of sand which was found on a portion of a tract of land owned by defendant, which portion comprised 2.954 acres lying on the batture between the levee and the Mississippi River. Under the provisions of LSA-R.S. 48:441 et seq., the Department entered upon the property and removed therefrom 60,000 cubic yards of the river sand. A borrow pit remained thereafter, covering the aforesaid acreage to a depth of about 10 feet. In that proceeding, a temporary servitude, for the purpose of removal of the sand from the property, was sought.
To fulfill the requirements of the Department of Highways upon the aforesaid project, it was necessary that the soil be predominantly sandy and have a low plasticity index. There, as in the instant case, the defendant contended that the just compensation payable was the market value of the materials removed and not the market value of the land itself. The position of the defendant was sustained because of particular requirements as to a particular material possessing special qualities.
It was, however, pointed out, in the cited case, that the deposits found on the defendant's property were of sufficient rarity and uniqueness to require special search *85 therefor, and, when found, they fulfilled a highly specialized need.
In the instant case, the facts disclose a situation markedly different from those found in the Hayward case but similar to the facts of the Glassell and Ponder cases. The dirt sought in the instant case was not unique, rare, or valuable; nor did it fulfill a highly specialized need of the State. The material constituted, as shown by the record, ordinary fill dirt.
We are, therefore, constrained to follow the principle enunciated by the Supreme Court in the Glassell case, as we must, indeed, do so, and to hold that compensation for the borrow pit must be calculated upon the market value of the land from which the dirt was removed, according to its highest and best use at the time of the institution of this action, and that a determination upon a basis of the quantity of dirt removed was erroneous. In this connection, so far as the record discloses, there was no demand or market for fill dirt in the vicinity of defendant's property prior to the highway project for which the servitude was obtained; no demand or market even then existed except for use on the project for which the servitude was granted. Hence, an enhanced value occasioned by such project may not be considered in arriving at the market value of the property. LSA-R.S. 19:9.
On the aforesaid basis, the servitude on the tract of approximately nine acres should have a value of $200.00 per acre, or, for the whole, of $1,800.00. The sum of $113.00 as the value of a worthless strip bordering the pit, as shown by the testimony of one of plaintiff's witnesses, should be added to the appraisal.
Therefore, the compensation to which plaintiff is entitled is the principal sum of $10,110.00 instead of $23,197.00. The judgment must be modified and reduced accordingly.
Inasmuch as the award is less than the amount deposited in the registry of the court, which the record reflects the defendant has withdrawn, it follows, under LSA-R.S. 48:456, that plaintiff recover judgment of the defendant for the amount withdrawn in excess of the compensation as hereinabove determined.
For the reasons assigned, the judgment appealed is amended by reducing the principal of the award in favor of the defendant, Eugene H. Lumpkin, Jr., and against the plaintiff, the State of Louisiana, through the Department of Highways, from the sum of $23,197.00 to $10,110.00.
It is accordingly Ordered, Adjudged, and Decreed that there now be judgment in favor of the State of Louisiana, through the Department of Highways, against the defendant, Eugene H. Lumpkin, Jr., for the full sum of $13,087.00, the aforesaid excess payment or withdrawal, with 5% per annum interest thereon from February 6, 1962, until paid; and
It is further Ordered, Adjudged, and Decreed that the judgment appealed, as herein above amended, be, and the same is hereby, affirmed; the cost of the appeal is assessed against the defendant.
Amended and affirmed.

On Application for Rehearing
PER CURIAM.
The opinion of this court, on original hearing of this case, was rendered on October 26, 1962, and copies thereof, addressed to counsel, were deposited in the United States mail on the same day.
Under the provisions of Rule XI, Section 1, Uniform Rules of the Courts of Appeal (1961), 8 LSA-R.S., adopted pursuant to the authority of Article VII, Section 24, L.S.A.-Constitution, the delay for filing the application for rehearing begins on the date of mailing by the court, and applications for rehearing must be filed on or before the fourteenth calendar day after, but not including, the date of mailing. The period for filing application for rehearing, in this instance, therefore expired on November 9, 1962.
*86 The application for rehearing in this case was shown by the postmark to have been deposited in the United States mail at Minden, Louisiana, on November 9, 1962, but was not physically received by this court until November 10, 1962, the day following the expiration of the period as above set forth.
The jurisprudence is now well settled, by reason of numerous decisions on this point, that, for purposes of considering the timeliness of the application for rehearing, the date of filing is the date that such applications are physically delivered into actual custody of this court, not the date of mailing.
The latest pronouncement involving the identical points above set forth is found in Jefferson v. Jefferson (3rd Circuit, 1962), 145 So.2d 356, which contains references to numerous appropriate authorities.
For the foregoing reasons, the instant application for rehearing cannot be considered by this court.