BOLIN, Judge.
in the construction of a multiple-lane highway across North Louisiana, it was necessary for plaintiff to expropriate 36.-735 acres of land owned by defendant in Webster Parish. Being unable to purchase the property, plaintiff deposited the sum of $183,000 in the registry of the court and title to the land was transferred to plaintiff by an order of the court pursuant to LSA-R.S. 48:441 et seq. In due time the case was tried in the district court resulting in a judgment fixing the total valuation of the property taken and severance damages at $347,349.99. From such judgment defendant appeals, praying for an increase in the total award to $1,060,-000, and plaintiff has answered the appeal, asking that the award be reduced to $183,000.
The only question before the court is the compensation due defendant. The Constitutions of the United States and of Louisiana permit the taking of private property for public purposes only after payment of just and adequate compensation. The basis for an adequate award “shall be the value which the property possessed before the contemplated improvement was proposed.” (LSA-R.S. 19:9.) The value of property expropriated must be determined as of the time the estimated compensation was deposited in the court, but where the landowner has other property damaged by the taking he is entitled to be recompensed for such damages to be determined as of the date of trial. (LSA-R.S. 48:453.)
The landowner should be paid the true value, which is generally the market value of the property expropriated, as well as damages resulting to the remainder. Market value has been defined as the price that would be agreed upon at a sale between a willing seller and a willing purchaser. State Through Department of Highways v. Ragusa, 234 La. 51, 99 So.2d 20 (1958) and cases cited therein.
Where there have been no sales of comparable property the true value must be determined from other sources. In such cases the intrinsic value, or its worth to its owner, may be taken into consideration in arriving at a value. In other words, any evidence which throws light upon the true value of the property should be considered in order that the owner receive just and adequate compensation for his private property. See State Through Department of Highways v. Crockett (La.App. 2 Cir. 1963) 151 So.2d 496 (cert. denied 244 La. 397, 152 So.2d 63) and cases therein cited.
The record of this case reflects that prior to this litigation defendant owned several hundred acres of land upon which were located certain improvements consisting of an office building, repair shops, warehouse, a gravel and sand processing plant, a pipe plant, storage building, garage, railway spur tracks, access roads and various other improvements and machinery necessary for the operation of a sand and gravel plant and concrete manufacturing plant. For the convenience of writing this opinion, we have divided and classified the land owned by defendant as follows:
*450 Tract No. 1 — 412 acres owned in fee, from which defendant had previously removed and processed all of the sand and gravel. On this tract was located most of defendant’s buildings and manufacturing plants.
Tract No. 2 — 255 acres owned in fee and located about a mile and one-half north of the manufacturing plants. This property was being used primarily by defendant for the extraction of sand and gravel after which it was transported over defendant’s access roads to its processing plants.
Tract No. 3 — 400 acres near Tract No. 2 which defendant did not own in fee, but which it had under lease for the removal of sand and’gravel. Defendant had several more years remaining under the lease for the removal of the sand and gravel at the time of the expropriation.
In order to construct the highway, plaintiff expropriated a strip of land 300 feet wide across Tract No. 1. The highway known as 1-20 had limited, controlled access roads and the right-of-way was otherwise completely enclosed by a fence. It is conceded the effect of such a highway through defendant’s property completely isolated a portion of the property upon which is located its manufacturing plants from the source of raw materials on the remainder of the property. Such property being bounded on two sides by swampy land and on the third by a United States Government Ordnance Plant was rendered inaccessible by the construction of the fences along the right-of-way.
Since the only matter in controversy is the amount due defendant as just compensation for the land expropriated for the right-of-way and the severance damages to the remainder of its property, we shall break down such claims and discuss them separately.
The lower court fixed a value of $50 per acre for the 36.735 acres of unimproved land taken. As this award is reasonable and based on competent evidence, we see no reason to change it. Within the right-of-way were also located certain improvements in the form of spur tracks, warehouse, etc., but it is impossible to give these improvements a separate valuation from the manufacturing plant as a whole.
The lower court fixed a value of $320,-493.24 on all the improvements located on defendant’s property which went to make up the various manufacturing and processing plants previously mentioned herein. Most such improvements were not located on the land actually expropriated. Any award based on the valuation of property outside the right-of-way would properly be classified severance damages, while the improvements located within the right-of-way should be paid for on the basis of property expropriated. However, inasmuch as it is conceded the construction of the highway across defendant’s property would render worthless its manufacturing plants, we, as did the lower court, shall treat the buildings and improvements in one category regardless of location.
There were a number of experts who testified as to the value of the improvements. The two main witnesses for the plaintiff were expert appraisers who had appraised much of the property for plaintiff for the construction of 1-20 throughout the area. However, they both admitted they had never appraised any property similar to that in dispute. Defendant, on the other hand, tendered several experts in the field of sand and gravel. Taking such evidence into consideration the lower court fixed a value of $320,493.24 on the improvements that were either taken by plaintiff or totally damaged by the expropriation. We deem it unnecessary to review all the testimony of witnesses who testified as to this valuation. We have studied the record and have concluded the trial judge’s award on this item is *451 fair and reasonable and based on legal evidence. There were no comparable sales and the true value necessarily had to be determined from other competent evidence.
We next consider the claim for damages to land in Tract No. 1, remaining after the expropriation of the 36.735 acres. The major portion of the manufacturing plant was located on this property. In view of the fact this 375.5 acres has been rendered practically worthless by the construction of the highway defendant is entitled to an award for such damages. As all the sand and gravel had been mined and removed from under this land, the lower court fixed the damages on the basis of the land having a value of $50 per acre before the taking and $10 per acre after the taking or having been damaged at the rate of $40 per acre. In fixing the damage to this 375.5 acres, the lower court refused to take into consideration the location thereon of a large stockpile of sand totaling approximately one million cubic yards. This sand, located near the gravel plant, had built up over a period of years resulting from the washing of gravel. The trial judge stated the construction of the controlled access highway had caused defendant to abandon this stockpile of sand and there would be no way for the company ever to remove it. In spite of such conclusion, the court did not think defendant was entitled to be paid for this large financial loss and cited, but distinguished, the case of State Through Department of Highways v. Hayward, 142 So.2d 832. Since the rendition of the decision below the cited case was overruled by the Supreme Court. (See 243 La. 1036, 150 So.2d 6.)
Although we agree with the trial court that the instant case is distinguishable from the Hayward case on its facts, we are unable to agree that defendant is not entitled to recover its damages by reason of its being forced to abandon a stockpile so large as this. In the first place, the Hayward case involved the question of the proper method of computing the value of sand when the highway department had expressly expropriated a servitude to remove the particular quality and type .of sand located near and used in building the highway. In that case the Supreme Court very properly decided the landowner was entitled only to the value of the property expropriated at the time of the taking without regard to the enhancement of the value because of the highway construction. Under the facts of that particular case, the landowner was not, therefore, entitled to be paid for the sand on the basis of its worth to the highway department in the construction of the road. In the instant case, we are concerned with sand not expropriated or taken by the highway department, but sand which is part of the realty near defendant’s sand and gravel plant- and outside the right-of-way, which land has admittedly been damaged by the expropriation. The location of--this sand on defendant’s property greatly enhanced the value of its property and the expropriation has damaged that part, of the property where the sand was located.
As we view the matter, the only question is whether there is sufficient evidence in the record to properly calculate an award for the severance damage to the property upon which the stockpile of sand was located. Defendant’s witnesses claim the sand had a value of $150,000, while plaintiff asserts it had no legal, value and whatever actual value it had defendants should have moved it off the property before the construction of the highway was completed. The evidence shows it would have cost more to remove the sand than defendant could have sold it for on the market. This was occasioned by the fact the sand could only be sold on the site as a demand arose, and there was no demand for such a large amount at that time. This very type sand was used for the construction of this highway, but de *452 fendant could not contract to sell it because of this expropriation. The evidence is conflicting as to what the sand was worth on the premises at the time the expropriation order was signed. One of plaintiff’s witnesses originally estimated a small percentage of the stockpile to be worth $40,000. However, he changed his estimate on the day of the trial and concluded it was worth nothing. Another of plaintiff’s witnesses said he at first thought the sand had some value but because he knew of no basis upon which to calculate it and further because he was advised by plaintiff’s attorney that it was not a com-pensable item he did not include it in his final estimate. Taking all the evidence into consideration, we think the stockpile consisting of one million cubic yards of sand was a valuable asset to defendant and enhanced the value' of defendant’s land upon which it was located to the amount of $75,000.
Summarizing our conclusions relative to 375.5 acres remaining in Tract No. 1, we find the total acreage has been damaged by the expropriation at the rate of $40 per acre or $15,020, plus $75,000 for the stockpile of sand, or a total amount of $90,020 as severance damages to Tract No-. 1.
Tract No. 2: The testimony is undisputed that there was approximately 900,000 cubic yards of sand and gravel in place and under this 255-acre tract owned by defendant. It is also uncontradicted that as a result of this expropriation defendant will not be able to mine such sand and gravel in its processing plant because the plant has been cut off from this acreage by the construction of the highway. It is not seriously contested the value of this sand and gravel to the defendant, if it had been able to maintain its plant in its former location, would have been approximately $225,000. The lower court concluded defendant, therefore, suffered serious damages to this property by the forced abandonment and destruction of its sand and gravel plant. In this connection, it is noted defendant constructed a new plant approximately seven miles west of the one abandoned, but it was impossible to remove the sand and gravel from this 255 acres to its new plant because of the distance, inaccessibility and costs involved.
Defendant also testified it knew of no way the sand and gravel under this acreage could economically be recovered and processed because there was not enough reserves under the ground to justify the erection of an expensive plant for the small amount of sand and gravel thereunder. The lower court’s refusal to award defendant damages on this item is unjustified. This sand and gravel was admittedly worth twenty-five cents per cubic yard to defendant if plaintiff had not caused it to abandon and remove its former manufacturing plant. We are satisfied from the record that inasmuch as defendant still owns this mineral reserve it has some future value which we fix at ten cents per cubic yard. Since this mineral deposit was estimated to be worth twenty-five cents per cubic yard to defendant had his plant not been destroyed by the expropriation, defendant has been damaged fifteen cents per cubic yard for the 900,-000 cubic yards of sand and gravel left in place under Tract No. 2, or $135,000.
The lower court awarded defendant the sum of $10,000 as damages for the loss of his right to remove sand and gravel for the remainder of the term of his lease from approximately 400 acres of land referred to as Tract No. 3. To us the evidence is clear that there was approximately 100,000 cubic yards of sand and gravel in place under this property. However, the lower court concluded defendant was damaged to- the extent of only ten cents per cubic yard, or $10,000 be-' cause the lessee only had a few years remaining in which to remove the sand and gravel before expiration of its lease. We find no error in this portion of the judgment
*453 By way of recapitulation, we find defendant is entitled to the following:
(1)
For the expropriation of 36.-735 acres of land at $50 per acre - $1,836.75
(2)
As severance damage to 375.5 acres of land upon which was located approximately 1,000,-000 cubic yards of sand-$90,000.00
(3)
As the value of the improvements either expropriated or totally damaged by the expropriation -$320,923.24
(4)
Severance damage to 255 acres owned by defendant under which was located approximately 900,000 cubic yards of sand and gravel-$135,000.00
(5) '
Severance damage to 400 acres of land which defendant had leased, and under which was located approximately 100,000 cubic yards of sand and gravel-$10,000.00
TOTAL AWARD_$557,779.99
The lower court fixed the expert fees of defendant’s witnesses at $100 each and taxed same as costs. In the appeal defendant contends such fees should be increased to the sum of $1,500 each. The fixing of these fees is largely within the discretion of the trial court, and as we find no abuse of this discretion, we shall not disturb this item.
For the reasons shown, the judgment appealed from is amended so as to increase the award to defendant from $347,349.99 to $557,779.99, and as thus amended is affirmed. Plaintiff-Appellee is taxed with such costs as it is legally obligated to pay.
Amended and affirmed.