AYRES, Judge.
This is one of a series of expropriation-proceedings occasioned by the construction of Interstate Highway 20, a controlled-access highway, across north Louisiana.
At the time of the institution of this proceeding, defendant owned a tract of land comprising 132 acres, more or less, situated in Lincoln Parish, Louisiana. This tract fronted the Old Travelers Road on the north and was bounded by U. S. Highway 80 on the south. The right of way expropriated, 300 feet in width and having an area of 9.394 acres, extended across *256 the tract in a general east and west course and approximately parallel to both road and highway. Thereafter there remained of the tract 65 acres north and 58 acres south of the right of way.
A determination was made that the property taken had a value of $65.00 per acre, or $611.00 for the total acreage expropriated, and that the timber thereon had a value of $883.00. The aggregate of the sums, $1,494.00, was accordingly fixed as the amount of compensation due defendant. No allowance was made for severance damages. From a judgment signed in accordance with this determination, defendant appealed.
Defendant’s primary objections relate to the alleged inadequacy of the award for the property taken and to the court’s failure to make an award for severance damages. Testifying for the plaintiff were B. H. Rainwater, Jr., Ruston, Louisiana, and E. A. Porter, Jr., Monroe, Louisiana, realtors who had appraised the property for the State. Objections were made to the hearsay character of considerable of their testimony, which testimony, it was also contended, did not comply with the best-evidence rule. Information received from booklets or pamphlets having general application to the lands of Lincoln Parish was, of course, hearsay and inadmissible, as was the estimate of the value of timber made by a third party, a sawmill operator. However, from our review of the record, it is clear that the court did not consider this character of testimony in fixing the award. In fact, the court disregarded entirely the estimate of the value of the timber and placed a value thereon in accordance with testimony offered by defendant.
The court had before it legally admissible evidence upon which the value of the property taken was determined. For instance, the trial court, in the course of its written opinion, stated:
“A review of the testimony of Mr. Rainwater will show that he used the market data approach in determining the value of the property of the defendant which has been taken in these proceedings. * * * Mr. Rainwater used actual sales of comparable properties which he felt were proper guides to be followed in determining the correct market value of the property expropriated. The first sale used by him as covering comparable property was dated April 26, 1957 and covered a tract of land consisting of 115 acres located about two and a half miles east of the subject property, which has been sold for $55.00 per acre. Mr. Rainwater verified this sale and determined the property sold to be comparable to the property which is involved in the case before the Court. His second actual sale considered to be comparable to subject property was a sale made June 20th, 1956 of a tract of land consisting of 180 acres located one-half mile northwest of the subject property. The witness determined that the sale price in said deed indicated a value of $55.00 per acre and he used this sale as covering property comparable to that involved in this suit. His third comparable was a sale of an undivided one-third interest in 75 acres of land located about one mile southeast of the subject property, which sold for $50.00 per acre. This transfer was made on May 17th, 1957.
“From these actual sales of comparable properties and from other methods employed by Mr. Rainwater, he reached the conclusion, following the market data approach in determining the value of defendant’s property, that in 1956-1957 its value had been from $50.00 to $55.00 per acre. Then adjusting this value to the time of the expropriation, and considering that the value of property might have increased from the time of said sales until the time of the expropriation, Mr. Rainwater adjusted the market value of the *257 defendant’s property, without merchantable timber and without any oil, gas or other mineral rights, to be $65.00 per acre. Consequently, it was his judgment that the actual value of the 9.394 acres of land taken, without merchantable timber or mineral rights, was $65.00 per acre, making a total of $610.61.”
Rainwater and Porter obviously collaborated very closely in making their appraisals. In general, the same “comparables” were used and identical results obtained.
The basis of the appraisals Was that the best and highest use to which the land taken could be put was growing timber, the use which defendant had made of the land for almost a quarter of a century. While the property was formerly utilized as a farm or homesite, it had not been so used for many years. The possibility of such future use would fall within the realm of speculation and conjecture. The defendant, who is mayor of the City of West Monroe, expressed the hope that he might someday retire and live on the property, but nothing definite was established in this regard.
In opposition to the testimony of plaintiff’s appraisers, defendant offered the testimony of F. O. Seymore, a realtor of West Monroe. This witness was not familiar with defendant’s property in 1958 when the right of way was expropriated. His appraisal was predicated upon a misconception that the highest and best use of the property was that of a homestead. The burden of-proof'is upon defendant to establish a greater value in the property expropriated than shown by the State’s appraisals. For the reasons hereinabove assigned, the evidence does not preponderate in defendant’s favor.
The question of the allowance of severance damages presents a more serious problem. The tract was, as already observed, divided into two tracts of 65 acres and 58 acres, respectively. There is no longer any direct access' between these tracts. The right of way of the highway is fenced on both sides, and access to the highway or beyond may be only had through one of the interchanges constructed for the purpose, the nearest being about one-half mile to the east of defendant’s property.
The south tract is, for all practical purposes, inaccessible. While the tract is adjacent to U. S. Highway 80, access to it cannot be had over that highway due to a ditch approximately 100 feet wide separating defendant’s property from the highway! Through this ditch the flow of a creek is diverted. Moreover, the highway is on a high fill or embankment. An entrance to defendant’s property from this highway would require the construction of a ramp and a bridge, the cost of which is only alluded to in the record as prohibitive. There are no roads or ways to' this tract otherwise available to defend-ánt.
The State’s appraisers were of the opinion that the value of the land for the growing of timber had not been adversely affected by the construction of the highway dividing the property. So far as the mere growing of timber is concerned, this may be true, but it would appear that the use of the land, even for timber-growing purposes, would be greatly affected and the value of the land reduced because of its inaccessibility.
The record also reveals that' the only “live water” on the original tract is south of the highway. The tract north of the highway is, therefore, deprived of the benefit of such water to which it formerly had full access.
The general and fundamental rule, of course, is that private property may not be taken or damaged for public purposes without adequate compensation. LSA-Constitution 1921, Art. 1, § 2; Scorsune v. State, 224 La. 1031, 71 So.2d 557. Thus, in addition to the market value of *258 the property taken, the owner is entitled to compensation for.damages sustained to his remaining lands, caused by such taking.Louisiana Constitution 1921, Art. 1, § 2; Louisiana Highway Commission v. Guidry, 176 La. 389, 146 So. 1; Texas Pipe Line Company v. Barbe, 229 La. 191, 85 So.2d 260; Texas Gas Transmission Corp. v. C. M. Thibodeaux Co., La.App. 1st. Cir., 1962, 148 So.2d 337.
Rights of ingress and egress are property rights which cannot be destroyed by a public body without just compensation. Cucurullo v. City of New Orleans et al., 229 La. 463, 86 So.2d 103; State v. O’Neal, La.App. 3d Cir., 1963, 149 So.2d 421, 423; State v. Brooks, La.App. 2d Cir., 1963, 152 So.2d 637, 641 (writs denied).
Thus, the question meriting consideration is the value of the remainder of the original tract which has been severed into two tracts, one of which has become inaccessible by the construction of Interstate 20. Plaintiff’s witnesses established that the property had a valuation of $65.00 per acre, discounting the timber thereon. Defendant’s witness estimated that the value of the tract south of the highway had been reduced by 50% and that the value of the tract north of the highway had been reduced by 30%. A mathematical calculation discloses that the severance damages thus sustained aggregate $3,152.50.
For the reasons assigned, the judgment appealed is amended and recast to read as follows:
It is therefore ordered, adjudged, and decreed that the market value of the property expropriated be, and the same is hereby, fixed in the sum of $1,494.00, and that damages to the remainder of defendant’s property be, and the same are hereby, fixed at the sum of $3,152.50, and from the total of which there is deducted the sum of $1,215.00 heretofore deposited in the registry of the court, leaving a balance of $3,431.50; and, therefore,
It is further ordered, adjudged, and decreed there be judgment herein in favor of the defendant, J. Allan Norris, and against the plaintiff, State of Louisiana,, through the Department of Highways, for the full sum of $3,431.50, with 5% per annum interest thereon from September 8, 1958, the date of the expropriation, until paid.
It is further ordered, adjudged, and decreed that the plaintiff, State of Louisiana, through the Department of Highways, pay all such costs of these proceedings, including the cost of this appeal, as is assessable against it, and that, in the completion of such, appropriation, plaintiff deposit in the registry of the court, to defendant’s credit, the aforesaid sum, together with interest and such costs as are assessable against it.
Amended and affirmed.