461 So.2d 1282 (1985)
STATE of Louisiana, DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT, Plaintiff-Appellant,
v.
Larry G. TAYLOR, et al., Defendants-Appellees.
No. 83-1096.
Court of Appeal of Louisiana, Third Circuit.
January 15, 1985.
Writ Denied March 15, 1985.
Bryan Miller, Baton Rouge, for plaintiffappellant.
Thomas, Dunahoe & Gregory, Edwin Dunahoe, Natchitoches, for defendants-appellees.
Before DOMENGEAUX, GUIDRY, FORET, DOUCET and KNOLL, JJ.
DOMENGEAUX, Judge.
The questions involved on this appeal concern just compensation to which appellees are entitled by reason of expropriation. The property in question is located in Natchitoches Parish and was expropriated in fee by the State of Louisiana for the *1283 purpose of constructing a portion of Interstate I-49, commonly referred to as the North-South Road. The minerals underlying the tract of land taken were reserved to the defendants. Plaintiff filed suit on October 27, 1982, taking 49.932 acres and deposited the sum of $97,400.00, into the registry of the court, stating in its petition that of this sum $71,751.00 was for the value of land taken and improvements and $25,649.00 was for severance damages. Subsequent thereto, defendants withdrew the amount of money deposited, reserving their right to seek more compensation.
After trial, the lower court held that the value of the tract of land expropriated was $74,256.40. Additionally the trial court held that because of the construction of the highway, defendant's remaining property, some 224.225 acres, became landlocked. The court held the value of this property before the taking to be $325,135.76 with a residual value afterwards of $22,422.50 (or $100.00 per acre). This resulted in a severance damage award of $302,713.26. Additionally, the trial court awarded the defendants $137,020.00 for fill dirt which the State plans to excavate from one high portion of the expropriated land and relocate it to fill the embankment at a lower area. This resulted in a total award to the defendants of $513,989.66. The State was given credit for the amount deposited, generating a net award of $416,589.66. The court also awarded the plaintiff 25% of the excess award as attorney's fees and granted interest on all sums from the date of judicial demand.
From that judgment plaintiff has perfected this appeal claiming the trial court committed reversible error in the following respects:
1. In awarding severance damages in excess of the amount proven by defendants.
2. In making an award to the defendants for the value of the fill dirt.
3. In allowing the award of attorney's fees to bear interest.

THE SEVERANCE DAMAGE AWARD
The general law involved here is simply that the owner is entitled to the market value of his land at the time of the expropriation, and market value is what a willing purchaser will pay a willing seller under ordinary circumstances. An owner is also entitled to resulting or severance damage to the remaining property when only part is taken and damage results thereby to that remainder. In the latter case the measure of compensation is the dimunition in the value of the remaining property for sale or rental, determined by arriving at the value immediately before and after the expropriation. There is no disagreement between the parties as to the value of the land actually taken. However, there is a wide divergence of opinion as to the value of the alleged landlocked 224.225 acres lying north of the proposed Interstate.
At trial, the defendants presented two expert witnesses, Mr. R. Stacy Williams and Mr. Barry Guillet, both of whom concluded that as a result of the taking herein, the 224.225 acres remaining north of the Interstate were landlocked and as such their values were significantly reduced. Mr. Williams and Mr. Guillet testified that the primary reason for the severance damage was the lack of accessibility. Mr. Williams concluded that, in his opinion, the land had practically no residual value, i.e., $100.00 per acre, with the only value being that for speculative oil and gas leasing purposes. Mr. Guillet placed a slightly higher residual value on the property, i.e., $400.00 per acre, basing his conclusion on the possibility of a sale to one of the adjoining landowners.
In support of its defense of the position that the deposit of $25,649.00 as compensation for damages represented a just estimate of the severance damages, the State called Mr. James C. McNew and Mr. R.J. Fulco, expert fee appraisers. Both considered that if indeed the north remainder was landlocked, it contained 144 acres of timberland and about 80.225 acres of farmland, for a total of 224.225 acres.
*1284 Both appraisers studied comparable sales of landlocked property and concluded that of the allegedly landlocked property, the value of the timberland thereon would not be reduced but that the value of the crop land would be reduced by 20%. The explanation given for the difference in the value reduction was that extremely long intervals exists where no access is needed to harvest timber, as contrasted to the frequent need of access to harvest crops.
It has long been recognized that loss of access is a critical factor in the evaluation of damage to property which is caused by a partial taking. State, through Department of Highways v. O'Neal, 149 So.2d 421 (La.App. 3rd Cir.1963); and Cucurullo v. City of New Orleans, 86 So.2d 103 (La.1966).
Likewise it is well settled that severance damages must be shown to a reasonable certainty and must not be too remote or speculative for the mere possibility of severance damages is an insufficient basis for an award. City of Alexandria v. Jones, 108 So.2d 528 (La.1959).
We find that defendants have failed to prove the severance damages to a reasonable certainty; rather the evidence in the record is too speculative to support the award. For as pointed out in the trial judge's opinion "The probability exists that the defendants could obtain accessibility to this property."
The property in question is bounded on one side by the Interstate from which accessibility unquestionably cannot be obtained. However, opposite the Interstate boundary is the Missouri-Pacific Railroad. The other two sides are bounded by private landowners. The Bienvenus are on one side and there is a Mr. Deville on the other side. Defendants allege that "the record herein contains no evidence indicating the Bienvenus willingness to grant a way of passage." In reality, the record does not indicate what their intentions would be one way or the other. The record is simply devoid as to any efforts being made to secure a right of way across the Bienvenu property. As to the railroad, the record only establishes that a right of way across the railroad would be "distasteful". There is some evidence that, as according to defendant, Mr. Deville is "more likely than not" going to give gratuitous permission to cross his land. Further, there is some estimate as to the cost of building a road across Mr. Deville's land. But the evidence when viewed as a whole is simply not adequate to support the trial judge's determination of severance damages, i.e., that the residual value of the property is only $100.00 an acre.
We shall therefore remand this issue to the trial court to conduct further proceedings to determine the possibility of gaining access across the Deville property, the Bienvenu property, or the railroad property. This inquiry is to include all facets of securing rights of passage, whether by agreement or by legal process and the cost involved in either case, including the type of road to which the landowner may be entitled and the cost thereof. After these proceedings the trial judge will be in a better position to consider severance damages, and to assess realistic damages, if due.

THE FILL DIRT
Entirely without merit is the landowner's contention that the State would be unjustly enriched if we failed to affirm the trial court's award for the "top soil" of the land taken. Also without merit is their argument that, "there is absolutely no way the landowner can be compensated to the full extent of his loss if the award for the fill dirt deposit is not affirmed."
It should be noted that the record fails to show that the soil to be excavated was anything more than dirt. The "fill dirt" was simply the soil which covers the entire region. As the claimant's own witnesses responded about hills of such soil in the area, "they're hills, just hills ..." This was entirely unlike the true mineral deposit of sand in the case of Lafayette Airport Commission v. Roy, 265 So.2d 459 (La. App. 3rd Cir.1972), upon which defendants *1285 placed much reliance. In that case it was found that the quality of the sand "was unique in the area within 75 miles of Lafayette and the expropriated sand mine enjoyed a virtual monopoly on the marketa situation unparalleled elsewhere in Louisiana." However, it is more important to note that, for a proper compensation of the landowner, it is precisely "the full extent of his loss", and not the extent of any gain enjoyed by the State which is the relevant issue. State of Louisiana, through the Department of Highways v. Haywood, 150 So.2d 6 (La.1963). The case of State v. Bitterwolf, 415 So.2d 196 (La.1982), has made it clear that it is only "the landowner's loss" which determines the extent of his compensation. Here the full extent of the claimant's loss, as to the property expropriated, was the market value of the part taken. Both parties agree that the market value of the property taken was $74,256.40. That award includes the value of this simple dirt. There is no additional loss to plaintiff beyond the value of the amount awarded for the land expropriated.

THE ATTORNEY FEES
The statutory authority for awarding attorney fees is La.R.S. 48:453(E). It states:
"Reasonable attorney fees may be awarded by the court if the amount of the compensation deposited in the registry of the court is less than the amount of compensation awarded in the judgment. Such attorney fees in no event shall exceed 25% of the difference between the award and the amount deposited in the registry of the court." (Emphasis added).
The State's contention that the attorney fees should not bear interest is well founded. La.R.S. 48:453 E speaks of attorney fees being awarded based on the difference between "the judgment" and the amount deposited into the registry of the court. Section 453 E presupposes that a "judgment" is already in existence at the time attorney fees are assessed, for if no judgment existed prior to the award of attorney fees, the statutory formula for arriving at attorney fees could never be employed. Thus the fees cannot form a part of the judgment insofar as interest thereon is concerned. The use of the word judgment in Section 453 E can only refer to the trial court's determination of the value of the compensation awarded for the land taken, the severance damages, and any other proper damages.
These damages constitute what is meant by the use of the word judgment in Section 453 E with attorney fees being an accessory award and in fact being determined based upon the existence of "a judgment". Attorney fees are thus not part of the Section 453 judgment. Thus Section 455 authorizing interest on the judgment is not authorization for awarding interest on the attorney fees. Additionally it has been repeatedly held that the State is not responsible for interest unless mandated by express statute or stipulation. Makofsky v. Department of Highways, 205 La. 1029, 18 So.2d 605 (La.1944); Jefferson Lake Sulphur Company, Inc. v. State, 34 So.2d 331 (La.1947). There is no specific authority to assess interest against the State in this caseand we cannot create it. We are thus constrained to reverse that part of the judgment which awarded interest on the attorney fees.
For the above and foregoing reasons the portion of the trial court's judgment which awarded the sum of $74,256.40 for the land taken is affirmed. The portions of the judgment which awarded $137,020.00 for fill dirt and $302,713.26 as severance damages are reversed. The portion of the judgment which awarded 25% attorney fees on the net award of $416,589.66 is also reversed. The case is remanded to the trial judge to consider all facets of securing rights of passage, whether by agreement or by legal process, and the cost involved in either case, including the type of road to which the landowner may be entitled and the cost thereof. After these proceedings the trial judge will consider severance damages and assess a realistic figure, if any damages are due. The trial judge shall *1286 also consider whether a new award of attorney fees is proper under La.R.S. 48:453(E) and set that amount accordingly.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
GUIDRY, J., dissents and assigns reasons.
GUIDRY, Judge, dissenting.
I respectfully disagree with my brethren of the majority in their decision to remand this matter to the trial court for further proceedings on the issue of severance damages. I also disagree with the majority's determination that the defendants are not entitled to judicial interest on the attorney fees awarded pursuant to the provisions of La.R.S. 48:453(E). In other respects, I agree with the opinion of the majority, i.e., the award of $74,256.40 for the land taken and disallowance of the award for fill dirt removed by the State following expropriation.

REMAND
Although it is settled that, where the interest of justice requires, a cause may be remanded for further proceedings (La.C. C.P. Art. 2164), in my view, this authority should be exercised sparingly. In the instant case, both parties had full opportunity to present evidence on the issue of severance damages. Although I agree that the evidence in the record as to severance damages is somewhat speculative, there is jurisprudential precedent for the award made by the trial court. In this connection, the following excerpt from EMINENT DOMAIN IN LOUISIANA by Professor Melvin G. Dakin is particularly pertinent (at page 118 et seq.):
1. Loss of Access to Public Roads.

a. Total Loss of Access. When an expropriation of part of a tract 309 deprives the subject property of all opportunity for egress and ingress via public roads, the deprivation is compensable within the constitutional provisions. One court allowed the same amount per acre for land isolated as it had for land which was subject to a taking in part.310 While the courts agree as to this general principle of compensability for total loss of access to public roads, they are less uniformly agreed as to the appropriate measure of the damage and thus compensation.
Some courts have used the diminution in the market value of the property resulting from the loss of access as both the proof of the injury and the measure of compensation. Thus, when a taking leaves no road or outlet of any sort, thereby reducing the tract to merely nominal value, full market value may be awarded for the injury to the property.311 Yet, in one case, where a complete loss of access totally destroyed the value of the property remaining after the taking,312 it was held that the award of compensation should be measured by the cost of constructing the facilities necessary to provide some form of ingress and egress for the remaining 25 acres plus the diminution in value of such property, the total of which resulted in a dollar award greater than the value of the entire property prior to the expropriation. In another case the cost of facilities (a ramp and bridge) deemed necessary in order to remedy the inaccessibility of a tract separated from the highway by a 100-foot-wide ditch was termed "prohibitive"; instead, the court simply awarded the landowner a sum equal to 50 per cent of the original market value of the tract.313 Yet, in another case, where the cost of purchasing a right of way and building an access road would have been greater than the ensuing increase in the value of the affected parcel, the court found the remedy unfeasible and employed a rule requiring compensation not less in amount than the diminution in market value resulting from the loss of access.314
309 State v. Norris, 160 So.2d 255 (La.Ct.App. 1964); State v. Lumpkin, 158 So.2d 437 (La.Ct. App.1963), on rehearing, amending 147 So.2d 80 (La.Ct.App.1962); State v. Brooks, 152 So.2d 637 (La.Ct.App.1963); State v. Williams, 131 So.2d 600 (La.Ct.App.1961); Louisiana Highway *1287 Comm'n v. Watkins, 172 So. 185 (La.Ct.App. 1937).
310 Louisiana Power & Light Co. v. Mosley, 18 So.2d 210 (La.Ct.App.1944).
311 In State v. Treat, 163 So.2d 578 (La.Ct. App.1964), total deprivation of access was held to have diminished property's value by two thirds and, in State v. Brooks, 152 So.2d 637 (La.Ct.App.1963), the court attributed only nominal value to the remaining inaccessible land. Total loss of access was held to have completely diminished the value of property in State v. Gifford-Hill & Co., 158 So.2d 448 (La.Ct. App.1963); State v. Madden, 139 So.2d 21 (La. Ct.App.1962); and Louisiana Highway Comm'n v. Watkins, 172 So. 185 (La.Ct.App.1937).
312 State v. Lumpkin, 158 So.2d 437 (La.Ct. App.1963), on rehearing, amending 147 So.2d 80 (La.Ct.App.1962).
313 State v. Norris, 160 So.2d 255 (La.Ct.App. 1964).
314 State v. Shelton, 192 So.2d 161 (La.Ct. App.1966).
In my opinion, the parties have had their day in court, and we should decide this case on the basis of the record before us on appeal.

INTEREST ON ATTORNEY FEES
My brethren of the majority conclude that defendants are not entitled to interest on the award of attorney fees granted pursuant to the provisions of La.R.S. 48:453(E). I disagree.
La.R.S. 48:453 sets forth with particularity the measure of compensation due to a defendant in an expropriation case. Subsection E of Section 453 provides that "(R)easonable attorney fees may be awarded by the court if the amount of the compensation deposited in the registry of the court is less than the amount of compensation awarded in the judgment ...". Therefore, as part of the overall judgment, the trial court, in its discretion, may award attorney fees. La.R.S. 48:455 specifically provides that the judgment rendered therein "... shall include, as part of the just compensation awarded, legal interest on the amount finally awarded as of the date title vests in the plaintiff to the date of payment ...". In my view, the attorney fees awarded pursuant to Section 453, as part of the just compensation to which defendant is entitled, forms part of the judgment which is subject to the payment of interest under Section 455.
For the above reasons, I respectfully dissent.