406 So.2d 1360 (1981)
LOUISIANA RESOURCES COMPANY, Plaintiff-Appellee,
v.
Karlan P. GREENE, et al, Defendants-Appellants.
No. 8389.
Court of Appeal of Louisiana, Third Circuit.
October 28, 1981.
Rehearing Denied January 4, 1982.
*1361 Roger C. Edwards and Roger E. Boynton, Abbeville, for defendants-appellants.
Broadhurst, Brook, Miller & Reed, Oscar E. Reed, Jr., Lafayette, for plaintiff-appellee.
Before CUTRER, STOKER and LABORDE, JJ.
STOKER, Judge.
This is an appeal in one of two expropriation suits consolidated for trial and consolidated in this appeal.[1] The issues common to and related to both cases will be discussed in this opinion. The plaintiff-appellee is a pipeline company, Louisiana Resources Company (Louisiana Resources). This company brought suits to expropriate pipeline servitudes across the lands of defendants-appellants, Karlan P. Greene and Randall W. Greene (Greenes) and Walter Noel (Noel).[2] A bifurcated trial was held at the trial level. In the first phase of the litigation the trial court heard and passed *1362 on the right of Louisiana Resources to expropriate a twelve inch gas line across the properties of the Greenes and Noel in Vermilion Parish. After this issue was decided by the court in favor of Louisiana Resources and after construction of the pipeline, the second phase of the trial was conducted to determine the amount of compensation to be awarded to the Greenes and Noel.
Several issues are presented in this appeal by the Greenes and Noel, and plaintiff-appellee, Louisiana Resources, has presented certain issues through answer to the appeal. The issues presented by Greene and Noel are summarized as follows:
1. The first issue is whether Louisiana Resources established a right to expropriate the servitude. (This is the issue decided in favor of Louisiana Resources in the first phase of the litigation.)
2. Alternatively, in the event this court should affirm the right of Louisiana Resources to expropriate, the Greenes and Noel challenge the trial court's ruling granting a partial summary judgment foreclosing the presentation of evidence of severance damages.
3. Also in the alternative, the Greenes and Noel contend that the trial court erred in not considering sales of other pipeline rights-of-way which purport to be of value comparable to the rights-of-way expropriated from the Greenes and Noel.
4. In the further alternative, the Greenes and Noel complain that the trial court made inadequate awards to them.
In answer to the appeal Louisiana Resources alleges that the trial court erred in the following respects:
1. Award of attorney fees inconsistent with and in violation of the provisions of LSA-R.S. 19:8;
2. Excessive awards for expert witnesses;
3. Excessive awards for value of property taken;
4. Excessive awards for property, releveling, fertility, trespass, severance and miscellaneous damages;
5. Award of costs to defendants-appellants.
In its briefing before this court appellee Louisiana Resources appears to have abandoned its contentions that excessive awards were made insofar as the land value and damages to the land are concerned. Only three assignments of error are listed in appellee's brief: (1) it was not appropriate under LSA-R.S. 19:8 to award any attorney's fees at all, (2) alternatively, the amount of attorney's fees awarded was excessive, and (3) the trial court erred in casting appellee for costs of the expropriation proceeding.

I.

THE RIGHT TO EXPROPRIATE
LSA-R.S. 19:2(5) grants a general right to expropriate to corporations created for the piping and marketing of natural gas for the purpose of supplying the public with natural gas.[3] Appellants raise no question as to whether Louisiana Resources is an entity to which this general right is granted. In attacking appellee's right to expropriate the sole objection raised by appellants is directed to the question of whether with respect to the expropriation sought appellee has satisfied the public purpose requirement of the Louisiana Constitution.
Appellants contend that the taking of their property by Louisiana Resources Company did not meet the requirements for expropriation found in Article 1, Section 4 *1363 of the 1974 Louisiana Constitution. That article provides in pertinent part:
"Property shall not be taken or damaged by any private entity authorized by law to expropriate, except for a public and necessary purpose and with just compensation paid to the owner; in such proceedings, whether the purpose is public and necessary shall be a judicial question."
Appellants argue that the appellee failed to show that the expropriation was justified by a "public and necessary purpose". The testimony at trial on the issue of appellee's right to take revealed that the Louisiana Resources Company had contracted for and purchased a dedication of the gas in a 7,000 to 8,000 acre field near Henry, Louisiana, under development by Amerada Hess Corporation and the Ethyl Corporation. The appellee is obligated under this contract to construct a line to receive the reserves anticipated from this field. At the time that the issue of the appellee's right to expropriate was being litigated, two wells in a portion of the dedicated area known as the Bancker field were producing 10 to 15 million cubic feet of gas daily. The anticipated rate of production from the entire dedicated area was 50 to 75 million cubic feet of gas daily. The pipeline which the appellee has constructed across appellants' land (hereinafter called the Bancker extension) carries gas from the Bancker field into the Louisiana Resources Company's existing facilities at Cow Island, Louisiana.
A portion of this gas was supplied to several industrial customers along the Mississippi River. Customers under long term contract with the appellee were Cosmar, a manufacturer of styrene monomers used in plastic; Ciba-Geigy, a manufacturer of herbicides and pesticides; Hercafina, a manufacturer of methanol; and Agricultural Liquid Company and C. F. Industries, both manufacturers of anhydrous ammonia (a fertilizer). In addition, the appellee has several intermediate customers, including Ethyl Corporation, and Dow Chemical Company, which are entitled to buy excess capacity from the pipeline. Also, the appellee periodically makes sales to other industrial concerns in Louisiana.
Most of the gas in the Bancker extension is sold not to industrial plants, however, but to other gas transmission companies. Appellee is under contract to deliver specific quantities of natural gas to Louisiana Intrastate Gas Corporation; and to the extent that it has additional volumes of gas, appellee also sells gas to Transcontinental Pipeline and Sugar Bowl Gas Corporation. This gas is then delivered to other industries and consumers.
Some of the gas that appellee delivers to Louisiana Intrastate Gas Corporation is redelivered to cities, towns, and parish public distribution centers for sale to private consumers. Among the cities and towns which receive this gas are Lafayette, Alexandria, Natchitoches, Ville Platte, Grand Coteau, Patterson, and Logansport. Thus, the gas which flows through appellant's pipeline will be used by public utilities as well as by private industries.
Appellants contend that these uses of natural gas delivered through appellee's pipeline do not meet the public purpose test under Article 1, Section 4 of the Louisiana Constitution. In support of this contention, appellants urge that appellee's pipeline will not serve any interest located in Vermilion Parish, the area of expropriation, but will instead serve "some industries 100 or more miles from the location of the pipeline." Appellants argue that industries and individuals outside the immediate area of expropriation do not constitute the public for purposes of the public purpose test. This construction by defendants of the term "public" in Article 1, Section 4 of the Louisiana Constitution is extremely narrow and is contrary to Louisiana jurisprudence.
In United Gas Pipe Line Company v. Nezat, 136 So.2d 76 (La.App. 3rd Cir. 1961) the court found public purpose and necessity for a proposed pipeline which would carry gas under contract with suppliers and producers from gas reserves to be sold directly to consumers and indirectly to wholesalers for resale to consumers. The line in Nezat served cities and towns, power plants, paper mills, and chemical companies, interests similar to those which would be *1364 served by the line in the case before us. Supplying natural gas to either private individuals through public utilities or directly to private industries is a sufficient public purpose for expropriation, regardless of how far removed the consumers are from the area of expropriation. In the Nezat case, supra, consumers throughout Louisiana were served. In the cases of Texas Eastern Transmission Corporation v. Bowman, 238 La. 399, 115 So.2d 797 (La.1959) and United Gas Pipe Line Company v. Landry, 228 So.2d 565 (La.App. 1st Cir. 1969) expropriation was allowed for pipelines serving consumers in several states. It is obvious that the term "public" in the test for expropriation under the Louisiana Constitution is not limited to persons or interests found in the political subdivision in which the land to be expropriated lies.
Appellants cited the case of River & Rail Terminals, Inc. v. La. Railway and Navigation Co., 171 La. 223, 130 So. 337 (La.1930), and United Gas Pipe Line Company v. Blanchard, 149 So.2d 615 (La.App. 1st Cir. 1963), writ refused, 244 La. 135, 150 So.2d 590 (La.1963) for the proposition that expropriation is not allowed for the purpose of serving individual private enterprises only. As stated above, the Bancker extension indirectly serves public utilities as well as private industries by transmitting new supplies of gas to Louisiana Intrastate Gas Corporation's pipelines. The public need not be supplied gas directly from the pipeline for which expropriation is sought for the expropriation to meet the test of public purpose. The pipeline serves a public purpose merely by placing more natural gas in the stream of commerce. The court in Texas Pipe Line Company v. Stein, 190 So.2d 244 (La.App.4th Cir. 1966), writ issued, 249 La. 841, 191 So.2d 641 (La.1966), reversed on other grounds, 250 La. 1104, 202 So.2d 266 (La.1967) stated:
"The public advantage resulting from an enlargement of the resources of the State, increasing available industrial energy and promoting the productive powers of a considerable number of citizens, was recognized by our Supreme Court as a contribution to the welfare and prosperity of the community, and was held to be sufficient proof of public purpose to justify the taking of private property by expropriation. Calcasieu & So. Ry. v. Bel, 224 La. 269, 69 So.2d 40 (1953)."
Thus it appears that even if the appellant's pipeline did not serve the consuming pubic directly or indirectly, the furnishing of gas to private industries alone would be sufficient to meet the test of public purpose and necessity. In the cases of Dixie Pipeline Co. v. Barry, 227 So.2d 1 (La.App.3rd Cir. 1969), writ refused, 255 La. 145, 229 So.3d 731 (La. 1970) and Texas Pipe Line Co. v. Stein, supra, expropriation was allowed for pipelines which would connect only with privately owned plants. The courts in both cases noted the fact that the public would be served indirectly by gaining access to the products of the private enterprises.
Furthermore, the cases that the appellants cite in which expropriation was not allowed because the court did not find public purpose or necessity are inapposite to the facts of the instant case. In River & Rail Terminals v. La. Railway and Navigation Co., supra, the Supreme Court found no public purpose was manifested in a railroad's attempted use of land to construct a spur track to the site of a private industrial plant because the public had no right of access to this facility.[4] In the case before us the appellee's pipeline is accessible to and is actually used by many members of the consuming public. The court in Stein, supra, stated that "`actual public use' is not the criteria by which public purpose is determined." 190 So.2d 244 at 250. The public purpose of a facility is determined by its accessibility to the public. The uses by the public of appellee's pipeline amply demonstrate that the public has access to it.
In another case cited by appellants, United Gas Pipe Line Co. v. Blanchard, supra, no public purpose was found for a pipeline which would serve only two customers who *1365 are already being served by another company. In addition the pipeline company in that case introduced no certificate of public necessity from an appropriate federal or state agency, nor was any testimony presented as to the plant's need for additional gas supplies. Contrary to Blanchard, appellee in the instant case produced contracts with numerous users of the lines and presented testimony regarding the need to expand available gas supply. In addition appellee produced a Certificate of Transportation issued by the commissioner of conservation of Louisiana pursuant to LSA-R.S. 30:554. Appellee also introduced PL Order No. 288 issued by the Office of Conservation, Pipeline Division, granting its application to construct and operate an intrastate natural gas pipeline in Vermilion Parish. These certificates, along with the testimony of various witnesses at trial that the gas was available, needed, and would be used by industrial, commercial, municipal, and individual consumers, were sufficient to meet appellee's burden of showing public purpose and necessity.
Finally, there is no merit to appellant's further argument that appellee's reliance on the Certificate of Transportation and the Office of Conservation's order is unconstitutional. Appellants contend that these documents are findings by State agencies of public purpose and necessity and that the making of such findings is a function granted exclusively to the judiciary by Article I, Section 4 of the Louisiana Constitution of 1974. Appellees are correct insofar as their assertion that making such findings is exclusively a judicial function. However, the filing of the certificate is not conclusive on the issue of the right to expropriate the property in question. See also Texas Gas Transmission Co. v. Soileau, 251 So.2d 104 (La.App.3rd Cir. 1971), writ refused, 259 La. 878, 253 So.2d 214 (La. 1971).
This proposition was further considered in Tenneco, Inc. v. Harold Stream Investment Trust, 394 So.2d 744 (La.App.3rd Cir. 1981). In that case it was held that while a company seeking to expropriate could not rely exclusively on a certificate of public convenience and necessity issued by a governmental regulatory body to establish its "right to expropriate," the expropriating company could show its entitlement through other evidence. The case held that the landowner was not precluded from raising the question of whether the expropriating pipeline company was fulfilling the purpose of the certificate. However, the solution adopted by the trial court which found that public convenience had not been shown on the basis of the certificate alone, was to dismiss the expropriation suit without prejudice so as to permit the refiling of the suit and introduction of factual evidence on the point at issue. We affirmed. In Southern Natural Gas Co. v. Poland, 384 So.2d 528 (La.App.2nd Cir. 1980), writ denied 386 So.2d 363 (La.1980), it was held that a Federal Energy Regulatory Commission certificate of public convenience and necessity was some evidence that the public and necessary requirement of state law had been fulfilled, but it was not the sole and exclusive evidence.
We conclude that introduction of a certificate of convenience and necessity from a nonjudicial agency as part of the evidence is not unconstitutional as contended by defendants-appellants. If such a certificate was the only evidence of public purpose, undoubtedly the appropriate solution would be that adopted in Tenneco, Inc. v. Harold Stream Investment Trust, supra.
It is well settled that whether or not an individual in a particular expropriation meets the test of public purpose and necessity is a judicial question under Article 1, Section 4 of the Constitution. Here, however, appellee has presented ample evidence that its pipeline will serve a public and necessary purpose. Therefore, appellee has proven its right to expropriate in this case.

DID THE TRIAL COURT PROPERLY REFUSE TO ALLOW APPELLANTS TO PRESENT EVIDENCE OF SEVERANCE DAMAGE?
Louisiana Resources presented a novel issue in this case through filing a consolidated motion for summary judgment in advance of the trial phase for determination of compensation for the servitudes taken. *1366 On January 4, 1980, Louisiana Resources filed what it termed a motion for partial summary judgment applicable to the cases of both defendants. Tr. 297, Vol. II. The allegations of the consolidated motion for partial summary judgment note that identical paragraphs in the answers filed in each of the cases assert that defendants demand severance damages. Louisiana Resources further alleged that depositions of appraisers and answers to interrogatories show that no genuine issue of material fact existed as to severance damages except for $6,390.00 which would result to the property of the Greenes. It was alleged that no severance damages would result to the four tracts of Walter Noel involved in these expropriation proceedings.
The consolidated trial on the compensation phase of the two cases took place on January 21 through January 25, 1980. On the latter date, the court took the matter of compensation under advisement. The minute entry for the consolidated cases for January 21, 1980, includes a statement that the motion for summary judgment in the two cases was referred to the merits. This ruling may be found at page 481 of the transcript in Volume III (case # 8398). Prior to this ruling, at the very beginning of the trial, counsel for Louisiana Resources (the mover for partial summary judgment) brought up the motion and advised the court that it was relying on testimony from depositions and answers to interrogatories summarized as follows:
1. Testimony given in a deposition by Mr. Gene Cope, expert appraiser for appellants, to the effect that he found no severance damage resulting to the tracts in question.
2. Testimony given in a deposition by Mr. Cecil Gremillion, also an expert appraiser for appellants, in which he stated in answer to a question as to whether he found any severance damage that he did not calculate any severance damage. He was asked if he had any plans to calculate any severance damage and he answered in the negative.
3. In answer to an interrogatory requesting that defendants-appellants specify the severance damage to their property and itemize each element of this claim, appellants answered, "Defendants' real estate experts are not basing damage on severance approach and since depositions of the experts have been taken, counsel feels that plaintiffs (sic) have ample information concerning real estate evaluation and testimony of defendant[']s experts."
On the basis of the above listed points Louisiana Resources urged at the beginning of the trial that its motion for partial summary judgment should be granted to declare no severance damages to be due on any tracts except the one on which it was admitted that as much as $6,390.00 might be due. As noted above, the motion was referred to the merits.
Much of the briefing is devoted to the question of whether a motion for summary judgment was proper. As we view the question it should not be considered in terms of a motion for summary judgment. In fact, it is not clear that the motion as such was ever ruled upon.[5] We think the *1367 result reached is correct for the reason that in the answer to the interrogatory referred to above the appellants clearly abandoned their claim to severance damages asserted in their petition. Therefore, the trial court properly excluded evidence for severance damages at the trial when appellants sought the testimony of Mr. Gremillion to establish severance damages.
The trial court properly allowed $6,390.00 as severance damages to the Greene's tract number two. Plaintiff's own expert appraisers assigned severance damages of $5,810.00 and $6,390.00. In the motion for partial summary judgment Louisiana Resources admitted there was an issue of fact as to severance damages to the extent, at least, of $6,390.00. In our opinion the trial court correctly disposed of the severance damage issue in its final decision. In Michigan Wisconsin Pipeline Company v. Fruge, 227 So.2d 606 (La.App.3rd Cir. 1969), writ refused, 255 La. 149, 229 So.2d 732 (La.1970) we stated at page 610:
"Our jurisprudence is established that severance damages to the remaining property cannot be presumed and will not be awarded unless the owner shows by competent evidence that the value of the remaining land has been diminished by the taking. Texas Gas Transmission Corporation v. Young, La.App., 198 So.2d 453 (3rd Cir. 1967)."
We note further that the failure to prove severance damages in the Fruge case and in the instant case was due to the improper reliance by the landowner on a method of valuation which is not favored in the Louisiana jurisprudence.
We find no merit to the interpretation placed by appellants on the deposition testimony given by Mr. Cope of the other factors which they contend preserved their severance damage claim. By their answer to the interrogatory appellants clearly abandoned the severance damage claim prior to trial of the compensation issue except as to the $6,390.00. The trial court properly did not permit appellants to adduce evidence contrary to their admission in the answer to the interrogatory. Under LSA-C.C.P. art. 1428 appellants were under a duty to timely amend their answer to the interrogatory if they intended to produce evidence of severance damages. Appellants should also have disclosed the fact that Mr. Gremillion had calculated severance damages after he gave his deposition in which he stated he had made no such calculations and did not plan to do so. Therefore, we consider the refusal to permit appellants to pursue the severance damage issue at trial was a proper sanction to be applied under subparagraph (2) of LSA-C.C.P. art. 1428.[6]

DID THE TRIAL COURT FAIL TO USE A PROPER APPROACH IN DETERMINING COMPENSATION?
Appellants state as the third assignment of error that "The trial court erred in its application of the law in rejecting the approach of the defendants' experts arriving at just and adequate compensation." Appellants urge in these cases that the proper approach for arriving at a figure for compensation should be based on sales of other pipeline rights-of-way comparable to the right-of-way expropriated by the appellee in this case. This method of calculating *1368 just and adequate compensation has been urged before this court before and has repeatedly been rejected. Columbia Gulf Transmission Company v. Rosteet, 389 So.2d 778 (La.App.3rd Cir. 1980), writ refused, 394 So.2d 617 (La.1980); Louisiana Intrastate Gas Corporation v. Edwards, 343 So.2d 1166 (La.App.3rd Cir. 1977), writ refused, 345 So.2d 904 (La.1977); Michigan Wisconsin Pipeline Company v. Fruge, supra.
Appellants cite the cases of State, Department of Highways v. Crow, 286 So.2d 353 (La.1973); State, Through Department of Highways v. LeBlanc, 388 So.2d 412 (La. App.1st Cir. 1980); and State, Department of Highways v. Terrace Land Company, 298 So.2d 859 (La.1974) for the proposition that "All of the tools of evaluation, including the determination of highest and best use, the study of comparables, cost of structure and depreciation studies, and income analysis, are only means of fixing just and adequate compensation. No one of these tools, is an end in itself." State, Depart, of Highways v. Crow, supra. However, the court in Crow also states at page 356:
"If there is a priority attached to the study of comparables, it exists only because, in most cases, that approach is most likely to produce accurate results, insuring just and adequate compensation. When, however, the study of comparables does not, as a matter of fact, serve to best insure an accurate evaluation, the prime consideration of just and adequate compensation requires that courts be free to use any other method better suited to a correct assessment of value."
In the three cases cited by appellants, Crow, LeBlanc, and Terrace Land Company, there was either insufficient evidence of comparable sales on which to base an estimate of just compensation, or else there was some reason that the comparable sales approach was not wholly satisfactory in estimating just and adequate compensation. Neither situation applies in the instant case. Ample evidence of comparable sales was presented in evidence at trial and there is no reason why the comparable sales method will not result in a finding of just and adequate compensation in this case.

WERE THE AWARDS TO THE LANDOWNERS INADEQUATE?
Appellants set forth as their fourth assignment of error that "the awards given were grossly inadequate and the law and the evidence supports awards which are much greater."
We do not find the one award for severance damages, and the compensation for the land taken including miscellaneous damages to be inadequate. We also find that, with the exceptions to be noted below, the awards given to appellants for court costs and attorney's fees are fully supported by the record.
Appellants emphasized the fact that the total award to the landowners in the case of Louisiana Resources Company v. Langlinais, 383 So.2d 1356 (La.App.3rd Cir. 1980) represents a much higher valuation per acre than does the award granted to themselves. As pointed out by appellants, the Langlinais case involved the same expropriating company and the same pipeline as the case before us does, and appellants urge that the land taken in that case is similar to their lands.
Assuming that this is true, we note that the reason for the discrepancy in the awards in the two cases lies in the much greater award for severance damages granted to the defendants in Langlinais. The trial court's award in that case, as reduced on appeal, is itemized as follows:

"1) Value of permanent servitude
 taken $ 6,800.00
2) Residual value 680.00
3) Value of temporary servitude
 taken 937.00
4) Severance damages 31,500.00
5) Agricultural damages 1,475.00
 __________
 TOTAL $40,032.00"

As can be seen, the greatest portion by far of the award was for severance damages.
As noted above, however, the evidence presented by appellants as to severance damages was properly objected to at the trial level and cannot be considered by this court.
Thus, the trial court in the case before us did not abuse its discretion in the awards *1369 granted under the comparable sales approach. Considering only the valuation of the permanent servitudes arrived at by the trial court in Langlinais and in this case, we find that the award in Langlinais amounted to approximately $2,500.00 per acre, and the awards in this case range from approximately $5,520.00 an acre for Noel's tract one to $2,500.00 an acre for Noel's tract two. Noel's tracts three and four and both of the Greenes tracts were valued at $3,000.00 per acre.
Since the value of expropriated property is solely a question of fact, a trial court's determination of value carries the same weight as any other finding of fact and the manifest error rule applies. State, Through Department of Highways v. LeBlanc, supra. We find the amounts awarded for the value of the property taken as well as for severance damages are amply supported by the record and by comparable awards in prior cases. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
As to the awards given for court costs and attorney's fees, appellants complain only of the compensation granted for the fees of their appraisal expert, Mr. Gene Cope. Mr. Cope testified that he charged the landowners $3,600.00 for his services. The trial court allowed only $2,400.00 with the following comment in its minute entry.
"Mr. Cope's award was reduced by one-third (1/3) the amount originally requested because he testified that one-third (1/3) of his time was spent on determining the values awarded for similar rights-of-way, which is a cost disallowed by the Court."
The subtraction made by the trial court from appellants' claim for court costs was for the portion of time spent by Mr. Gene Cope in preparing an analysis of comparable rights-of-way. Since the testimony on comparable rights-of-way was totally rejected by the court, the costs for preparing the testimony were properly disallowed. Adamson v. Westinghouse Electric Corporation, 236 So.2d 556 (La.App.4th Cir. 1970).

II.
In its answer to the appeal Louisiana Resources included allegations to the effect that various items of compensation and damages were excessive. These complaints apparently were abandoned as they were not included in the specification of errors listed in the briefs submitted on behalf of Louisiana Resources and were not mentioned in the text of the briefs.

DID THE TRIAL COURT VIOLATE LSA-R.S. 19:8 IN AWARDING ATTORNEY FEES TO THE LANDOWNERS?
The trial court awarded attorney fees to the landowners in these consolidated cases. Louisiana Resources contends this was error and in violation of the provisions of LSA-R.S. 19:8. We affirm the trial court but on grounds different from those stated by the trial court. LSA-R.S. 19:8 provides in part as follows:
"Immediately after compensation has been determined, the plaintiff shall, upon motion of the defendant, present evidence as to the highest amount it offered the defendant for the property prior to trial on the merits. After hearing evidence on the issue, the court shall determine the highest amount offered. If the highest amount offered is less than the compensation awarded, the court may award reasonable attorney fees." (Emphasis supplied.)
These two cases before us were heard in the trial court on a bifurcated basis. The issue of the right to expropriate was tried first. That issue was decided in favor of Louisiana Resources and the question of compensation and damages was heard in a later trial. Prior to trial of the issue of the right to expropriate Louisiana Resources made settlement offers of $13,880.00 to the Greenes and $13,595.00 to Noel. On the day that trial of the compensation phase began, but before trial began, Louisiana Resources made a consolidated offer to settle both cases for $55,000.00. No specific breakdown of the $55,000.00 offer between the Greenes and Noel was made. This was stipulated as fact. Apparently the offer was rejected and the parties went to trial. The trial court's award to the Greenes was $23,776.45 and the award to Walter Noel *1370 was $20,279.00. As these awards totaled $44,055.45, almost $11,000.00 less than the total amount offer prior to the trial of the compensation issue, Louisiana Resources contended that the trial court had no authority to award attorney fees. The trial court held otherwise. We do not accept the trial court's reasoning but reach the same result for other reasons.[7] The trial court apparently deemed that the "trial on the merits" referred to in LSA-R.S. 19:8 meant the second trial, i.e., the trial to determine compensation. See footnote 7. Appellants suggest that "trial on the merits" began at the time of commencement of the trial of the right to expropriate, and, therefore, we should base this inquiry on the offers made prior to that trial which were less than the awards. We need not decide that interesting question. As we will show, and assuming the trial court's interpretation on this point was correct, the $55,000.00 consolidated offer made on the morning before the commencement of the second trial should avail Louisiana Resources nothing.
Inasmuch as no specific offer was made to the two sets of claimants individually, we are of the opinion that no offer was in fact made to them. By making one offer to both the Greenes and Noel together, neither had a specific settlement offer it could accept. The total settlement offer was limited, and the claimants were not required to either accept the offer without a breakdown or to agree upon a breakdown between themselves. By making a single offer, Louisiana Resources put the Greenes and Noel in opposition to one another. Had they agreed upon a division of the $55,000.00, a compromise settlement could have been made on the basis of the agreed allocation. Thus, by making the consolidated offer Louisiana Resources created a possibility for a three-way agreement. However, by making the offer on such a basis, no offer within the intendment of LSA-R.S. 19:8 was made to the individual litigants. The effect of the offer under the statute is the same as if no offer at all was made to the Greenes or to Noel. In our opinion the statute requires that an unqualified specific offer be made to each set of landowners in a situation such as this where separate cases are consolidated for trial. Because this was not done the "highest amount offered" under the statute was zero.
Considering the circumstances, the trial court had discretion under the statute to award attorney fees.[8] We think the award of attorney fees was in order.

WERE THE ATTORNEY FEES AWARDED EXCESSIVE?
Louisiana Resources complains on appeal in the alternative that the fees awarded by the trial court were excessive. After a special hearing as provided by LSA-R.S. 19:8 the trial court awarded $6,000.00 to each of the two attorneys who represented the appellants. Therefore, a total of $12,000.00 was awarded. A review of the transcript of testimony taken at the hearing on this matter convinces us that the awards were within the trial court's discretion.
Louisiana Resources forcefully argues that a $12,000.00 fee under the circumstances *1371 presents an anomaly. It points out that appellants were the losing parties in the first trial on the right to expropriate. Moreover, Louisiana Resources suggests that it is extraordinary that $12,000.00 attorney fees should be awarded to the parties who collectively were awarded $44,055.45 after refusing a $55,000.00 settlement offer at the beginning of the trial on compensation. In reality appellants lost the compensation issue by almost $11,000.00.
Appellee also urges that appellants should not be awarded more in attorney fees than the agreement with their attorneys called for them to pay. In this regard appellee contends that appellants' employment contract provided that the attorneys would be paid on a contingency fee basis. The attorneys were to be paid one-third of the amount by which the court award should exceed the total offer made to appellants. Louisiana Resources contends that using the two offers made before trial of the initial issue, the right to take, the difference between offers and awards is $16,225.44. It urges appellants should be limited to one-third of this amount, $5,408.07.
Against these arguments there must be balanced the right of landowners to test the right of an agency authorized to expropriate generally under Title 19 of the Louisiana Revised Statutes to (1) expropriate in a specific case and (2) to have its day in court on the issue of compensation. Appellee argues that awarding substantial attorney fees in cases such as these before us, in which the landowners may be said to have lost, results in an unconscionable benefit to the attorneys who represent landowners and benefits the attorneys only. We are of the opinion that whatever logic there may be to appellee's argument such should not be allowed to discourage the fundamental right of landowners to test an expropriation on all points or issues which may arise. Consider the provisions of Article 1, Section 4 of the Louisiana Constitution of 1974 relative to expropriations by private entities.[9] In any event, if there are possible inequities exposed by the results of this case, they are more appropriate for legislative rather than judicial attention.
For the foregoing reasons we affirm the amount of the attorney fees awarded.

SHOULD THE LANDOWNERS HAVE BEEN TAXED WITH THE COSTS OF THE LITIGATION UNDER LSA-R.S. 19:12?
The trial court assessed the costs of this expropriation to Louisiana Resources. In its appeal Louisiana Resources contends that the costs should have been assessed to the landowners under LSA-R.S. 19:12. This provision of law provides as follows:
"If a tender is made of the true value of the property to the owner thereof, before proceeding to a forced expropriation, the costs of the expropriation proceedings shall be paid by the owner."
Louisiana Resources focuses on the words "the true value of the property" and makes the following argument in its brief:
"The jurisprudence of this State requires a strict construction of this statute. South Central Bell Telephone Company *1372 v. Marsh Investment Corporation, 344 So.2d 6 (La.App. 4th Cir. 1977). Accordingly, by strictly applying this statute to the award made in this case, Appellants should have been cast with costs in this matter. By the Trial Court's breakdown of compensation (T.R. 453-456), the total amount awarded to Appellants for the "total value of property taken" (emphasis added) was TWENTY SEVEN THOUSAND FIVE HUNDRED NINETY EIGHT AND NO/100 ($27,598.00) DOLLARS, and the total offer made by Appellee to Appellants prior to institution of the present proceeding was TWENTY SEVEN THOUSAND EIGHT HUNDRED THIRTY AND NO/100 ($27,830.00) DOLLARS."
Louisiana Resources misplaces reliance on South Central Bell Telephone Company v. Marsh Investment Corporation, supra. What the court said in that case is contained in a footnote and the pertinent portion reads: "Inasmuch as legal costs in expropriation proceedings come within the constitutional guarantee of just and adequate compensation, any statute charging costs to the owner must be strictly construed." The point at issue which led to this pronouncement was an attempt by the expropriating authority through an answer to the landowner's appeal to reverse the assessment of costs so as to cast the landowner with the costs. The trial court awarded the exact amount offered by the expropriating authority. The court of appeal held that the offer did not constitute a tender as contemplated by LSA-R.S. 19:12. Thus, the strict construction was made in favor of the landowner. The constitutional grounds which mandate strict construction referred to in the cited cases clearly must be those laid down in favor of landowners in Article 1, Section 4, of the Louisiana Constitution of 1974.
In our opinion the strict construction we must give the statute in question necessarily runs against Louisiana Resources.
Considering the objective of constitutional and statutory law in favor of landowners and the protection afforded them, we reject the construction of LSA-R.S. 19:12 contended for by Louisiana Resources. We believe that the meaning of "true value of the property" should not be confined to the value of the land taken without taking into account other items which may make up the total award to a landowner. In these cases before us, for example, Louisiana Resources would ignore the items included in the two awards for damages to cover the costs of releveling, loss of fertility, trespass, and in the Greene's case, severance damages. When these items are added to the value assigned to the land taken, the "true value" was not offered to the landowner.[10]

WERE THE AMOUNTS AWARDED AS EXPERT WITNESS FEES PROPER?
In the alternative, Louisiana Resources contends that, if it is responsible for court costs, the awards of expert witness fees are excessive. The trial court made awards to the expert witnesses in both cases for a total of $5,403.00 as follows:

Murry Mayard $ 500.00
Adias Hargrave, Jr. 500.00
J. F. Noel 500.00
Cecil Gremillion 1,503.00
Gene Cope 2,400.00
 ________
 TOTAL $5,403.00

Louisiana Resources urges that no expert witness fee should be allowed for J. F. Noel and Adias Hargrave, Jr. because their testimony was stipulated into the record and they did not testify. As authority Louisiana Resources cites LSA-R.S. 13:3666 and State, Department of Highways v. United Pentecostal Church of Hodge, 313 So.2d 886 (La.App. 2nd Cir. 1975), writ denied, 318 So.2d 60 (La.1975), U.S. cert. denied, 423 U.S. 1018, 95 S.Ct. 453, 46 L.Ed.2d 389. We are not persuaded by either citation for authority in this instance. We believe that the landowners agreed to a stipulation of this testimony at the suggestion and urging of the trial judge for the purpose of shortening *1373 the proceedings. The total devotion of time by these experts was little affected by the stipulation. Under the circumstances the trial court acted within its discretion. The fixing of expert witness fees, being within the sound discretion of the trial court, should not be disturbed unless clearly erroneous. Prentice Oil & Gas v. Caldwell, 355 So.2d 1327 (La.App. 1st Cir. 1977), writ denied, 358 So.2d 640 (1978). For these reasons J. F. Noel and Adias Hargrave will not be deprived of expert witness fees merely because the parties stipulated to their testimony.
Mr. Murry Mayard was awarded an expert witness fee of $500.00. Louisiana Resources contends that he should be awarded a fee of only $4150.00. It contends that Mr. Mayard is entitled to payment for only one day's appearance since he testified on one day only. Additionally, Louisiana Resources contends that Mr. Mayard charged $100.00 for a deposition and consultation to which he is not entitled. Louisiana Resources argues that a reading of the deposition reflects that it did not require a full day of Mr. Mayard's time; it urges that Mr. Mayard's consultation with attorneys is not taxable as court costs under the jurisprudence.
At this point we must give our attention to the awards given to all three witnesses qualified as farmers inasmuch as we hold that fees for J. F. Noel and Adias Hargrave, Jr., were proper although their testimony was stipulated. The trial court awarded $500.00 to each of the three. At the hearing on assessment of costs the parties stipulated that $100.00 per day was a fair rate for the expert farmers. We have examined the testimony given in court by Mr. Mayard and concluded that he should reasonably have been required to be present in court on one day only. The same would apply to the two other farmer experts as they were not required to return to court. Hence, we consider that $100.00 as a fee for court appearance for each would be adequate. In the case of Mr. Mayard we will allow an additional $50.00 to cover the discovery deposition taken by Louisiana Resources so as to award him a total of $150.00. We will amend the trial court judgment with respect to these fees.
Louisiana Resources vigorously complains of the fees awarded to the two expert appraisers. The court awarded Mr. Cecil Gremillion the amount he billed appellants which was the sum of $1,503.00. Mr. Gene Cope was awarded $2,400.00. As noted above the trial court arrived at this figure by reducing the amount charged by Mr. Cope of $3,600.00 by one-third. Louisiana Resources makes numerous arguments in support of considerable reduction of the awards for the expert appraisers. While the arguments may have some merit, the two awards as a whole do not appear to be out of line. This being so we feel that these awards were within the trial court's discretion and we will affirm them.
For the foregoing reasons we will amend the judgment of the trial court so as to provide that the awards of expert witness fees to Murry Mayard, J. F. Noel, and Adias Hargrave, Jr. shall be as follows:

Murry Mayard $150.00
J. F. Noel $100.00
Adias Hargrave, Jr. $100.00

In all other respects the judgment of the trial court is affirmed. The costs of this appeal are assessed to defendant-appellants.
AMENDED AND AFFIRMED AS AMENDED.
NOTES
[1] The other case in this consolidated appeal is Louisiana Resources v. Walter Noel, 406 So.2d 1373 (La.App. 3rd Cir. 1981), number 8390 on the docket of this court in which we render a separate opinion on this same date.
[2] A third suit was involved but was amicably resolved out of court and is not before us. This was a suit against Roger C. Edwards.
[3] LSA-R.S. 19:2(5) provides:

"Where a price cannot be agreed upon with the owner, any of the following may expropriate needed property.
* * * * * *
"(5) Any domestic or foreign corporation created for the piping and marketing of natural gas for the purpose of supplying the public with natural gas or any partnership, which is or will be a natural gas company or an intrastate natural gas transporter as defined by federal or state law, composed entirely of such corporations or composed of the wholly owned subsidiaries of such corporations."
* * * * * *
[4] This particular case was not an expropriation case. The plaintiff owner of the land brought injunction proceedings to halt the use of its land by the defendant. Nevertheless, the case discussed legal principles relative to expropriation rights.
[5] Technically, it was error to refer the motion to the merits. DePaula v. Hudson, 208 So.2d 5 (La.App. 1st Cir. 1968). A hearing should have been held prior to proceeding to trial, but inasmuch as the result has not prejudiced the mover, Louisiana Resources, and it did not object to the referral of the matter to the merits, we are not called upon to further consider the matter in terms of the motion for summary judgment device provided by LSA-C.C.P. arts. 966 and 967.

The issue of appellant's right to present evidence on severance damages arose when counsel for the landowners sought testimony from Mr. Gremillion regarding severance damages. Objection to this testimony by appellee's counsel was sustained after extensive argument by both sides. (See Tr. 807-888, Vol. V, # 8389). The basis for the trial court's exclusion of severance damage testimony was the answer given to the interrogatory in which it was stated the appellants' experts were not basing damages on the severance damage approach. Appellants' counsel urged that Mr. Gremillion's testimony should be permitted as rebuttal to the testimony of appellee's experts that there was no severance damage except to the Greene's tract number two and as impeachment of their testimony. This back door approach was rejected by the trial court, but it ruled the testimony could be received for impeachment purposes. This meant, in effect, that appellants could not claim more severance damages than appellee admitted. Appellee then objected to admission of the severance damage testimony without the laying of a foundation. Ultimately, the trial court allowed appellant's severance damage testimony through a proffer of evidence.
From the foregoing it would appear that the motion for partial summary judgment was never directly ruled upon.
[6] The pertinent portions of LSA-C.C.P. art. 1428 provide as follows:

"A party who has responded to a request for discovery with a response that was complete when made is under no duty to supplement his response to include information thereafter acquired, except as follows:
* * * * * *
"(2) A party is under a duty seasonably to amend a prior response if he obtains information upon the basis of which he knows that the response was incorrect when made, or he knows that the response though correct when made is no longer true and the circumstances are such that a failure to amend the response is in substance a knowing concealment."
* * * * * *
[7] In a minute entry in which the trial court made its award of attorney fees it gave the following as its reasons for rejecting the contentions of Louisiana Resources:

"This award is based upon the discretion granted to the Court by LA. R.S. 19:8. Plaintiffs in the original action claim that an offer equal to or exceeding the amount awarded by the Court was made prior to trial on the merits. The record reflects that this offer was not made until the morning of the trial and that proceedings were thus postponed until much later that afternoon. The Court finds that the intention of the statute was to encourage good faith efforts to settle the matter in advance of trial, and that plaintiff's last minute offer does not constitute such a good faith attempt."
[8] The pertinent sentence of the statute provides that "[i]f the highest amount offered is less than the compensation awarded, the court may award reasonable attorney fees." (Emphasis supplied.) This court has held that this language makes the award of attorney fees discretionary with the court which does not require or mandate that attorney fees be awarded. Louisiana Resources Company v. Langlinais, supra, and Louisiana Intrastate Gas Corporation v. Guidry, 357 So.2d 830 (La.App. 3rd Cir. 1978), writ denied, 359 So.2d 1308 (La.1978).
[9] This constitutional provision is as follows:

§ 4. Right to Property
Section 4. Every person has the right to acquire, own, control, use, enjoy, protect, and dispose of private property. This right is subject to reasonable statutory restrictions and the reasonable exercise of the police power.
Property shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner or into court for his benefit. Property shall not be taken or damaged by any private entity authorized by law to expropriate, except for a public and necessary purpose and with just compensation paid to the owner; in such proceedings, whether the purpose is public and necessary shall be a judicial question. In every expropriation, a party has the right to trial by jury to determine compensation, and the owner shall be compensated to the full extent of his loss. No business enterprise or any of its assets shall be taken for the purpose of operating that enterprise or halting competition with a government enterprise. However, a municipality may expropriate a utility within its jurisdiction. Personal effects, other than contraband, shall never be taken.
This Section shall not apply to appropriation of property necessary for levee and levee drainage purposes.
[10] In these appeals no issue is made as to whether the offer made constituted a tender. In the hearing regarding attorney fees and costs, the parties stipulated that the offers were made.