473 So.2d 99 (1985)
STATE of Louisiana, Through the DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT
v.
James W. TOWNSEND, et al.
No. 84-367.
Court of Appeal of Louisiana, Third Circuit.
June 12, 1985.
Rehearings Denied August 9, 1985.
*100 Bryan Miller and Ed Michel, Baton Rouge, for defendant-appellant.
Franklin, Moore & Walsh Charles A. O'Brien, III, Baton Rouge, for defendant-appellee.
Before DOMENGEAUX, DOUCET and YELVERTON, JJ.
DOUCET, Judge.
The State, through the Department of Transportation and Development (DOTD), instituted this expropriation suit in order to acquire a tract of land on which a portion of I-49 is to be constructed. After the suit was filed and the property was taken, the defendants subsequently filed their answer wherein they demanded additional compensation over the amount deposited by the DOTD. The trial court granted the defendants' demand and awarded the sum of $322,187.48, subject to the credit of the $129,271.00 deposited in the Court's Registry as the DOTD's estimated value of the land taken. From this judgment the DOTD (plaintiff-appellant) perfected this Devolutive appeal.
The DOTD filed this expropriation suit on July 30, 1981, seeking to acquire a tract of land in Avoyelles Parish which consisted of approximately 80 acres. Pursuant to Louisiana's "quick-taking" statute (LSA-R.S. 48:441 et seq) the petition was filed and the appraised value of the land taken was subsequently deposited into the Registry of the Court on August 3, 1981. Upon this deposit, the title to the property described in the expropriation petition was transferred to the State. The defendants subsequently filed an answer wherein they demanded $300,000 in compensation in addition to the $129,271.00 that they had earlier withdrawn from the Registry of the Court.
The parent tract of this expropriated strip is of an unusual shape that is bounded on the east by Bayou Boeuf and on the *101 west by the Bayou Boeuf Diversion Canal. This lawsuit concerns the western end of this tract which is bounded by the Diversion Canal. The expropriated tract runs along the canal and also includes all of the land adjacent to the canal. Also, this tract consists of approximately 80 acres out of an approximate 329 acre parent tract. Furthermore, the expropriated strip was precision graded in order to ease the drainage of the land for agricultural purposes. However, the drainage system was directed toward the Diversion Canal to which the remainder of the parent tract no longer has access. Finally, the bank of the Diversion Canal consists of the dirt that was excavated during the construction of the canal. At trial, it was established that there was approximately 150,000 cubic yards of this dirt.
As the trial began, the plaintiff objected to the introduction of evidence for damages in excess of $300,000 because the answer demanded only $300,000. The lower court allowed for an amendment of the answer and instructed the defendant to file an amended answer. This was never done but the trial nonetheless proceeded in accordance with the amended answer. As LSA-R.S. 48:453 provides, the defendant presented this evidence first which consisted of men who are engaged in the dirt moving business and their appraiser, John Mowad. The plaintiff then presented its case which consisted principally of its two appraisers. After the trial, the lower court held that the value of the tract of land expropriated was $167,737.78. The trial court also held that because the expropriation deprived the remainder of the tract of its drainage outlets and therefore diminished its agricultural potential, the defendants were entitled to severance damages in the amount of $57,499.70. Additionally, the trial court awarded the defendants $100,000 for the fill dirt along the bank of the Diversion Canal. This resulted in a total award of $322,187.48, subject to the credit of $129,271.00 previously deposited into the Registry of the Court. The court also awarded the plaintiff 25% of the excess award as attorney's fees and granted interest on all sums from July 30, 1982, plus all costs including all expert witness fees.
From this judgment, the plaintiff-appellant perfected this appeal claiming that the trial court committed the following errors: 1) In awarding a recovery that exceeds the amount stated in the defendants' answer after objection was made to testimony about this greater amount; 2) That the court's finding that the cleared land that was taken was worth $2,100 per acre before the taking constituted clear error; 3) That the court's finding of severance damages constituted clear error; and 4) The trial court erred in awarding $100,000 for the spill dirt even though the defendants had earlier granted the State a servitude over said land for the purpose of construction of the Diversion Canal.
At the commencement of the trial, the defendant requested permission to orally amend his answer so as to insure that his demand was for $300,000 in addition to the $129,271.00 already withdrawn by the defendants. The State objected and the lower court allowed the amendment and instructed the defendant to file a written amendment into the record. The defendant neglected to file this written amendment as instructed but the trial court, nonetheless, granted an award in accordance with the oral amendment. The plaintiff-appellant contends that the trial court erred in awarding in excess of the originally demanded $300,000, when no written amendment was filed as per the lower court's instructions.
La.C.C.P. art. 1154 provides for the amendment of pleadings to conform to the evidence. Art. 1154 states that the court may allow an amendment and instructs the court to do so freely "when the presentation of the merits of the action will be subserved thereby, and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense on the merits." After reviewing the record we fail to see how this allowance of the amendment of the answer prejudiced the plaintiff's *102 position. The trial court was within its authority and was correct in allowing the increase in the amount demanded. The fact that no written amendment was ever filed is of no consequence. The issue of the amendment was decided at the trial and any written amendment to be filed into the record was a mere formality. Noncompliance with this formality does not preclude the award of a judgment in conformity with orally amended pleadings. See La.C. C.P. arts. 854 and 865.
In its next assignment of error, the plaintiff-appellant contends that the trial court was manifestly erroneous in its conclusion regarding the value of the land taken. In its written reasons for judgment, the trial court stated the following:

"VALUE OF THE LAND TAKEN
The fair market value is that value which would be agreed upon by a knowledgeable and willing buyer and a knowledgeable and willing seller given a reasonable time to market the property in question. The tract taken herein is an excellent tract of farmland being composed of fertile soil and having been precision graded prior to the taking. Drainage from the property front on Highway 1176 into the Diversion Canal in the back had been well maintained; good farming practices had been followed. Using the best comparable sales and a ten percent annual rate of appreciation, the indicated value for the subject property is $2,100 per cleared acre. This court adopts the DOTD's $1,100 per acre value for the rough uncleared land. Also, the DOTD's valuation showed the landowners should be paid $806 for the timber taken. The landowners agreed. Therefore, this court finds that the value of the property taken by the DOTD totals $164,737.78 as shown below:

Cleared Farmland:
 76.5590 acres at $2,100 per
 acre $160,773.90
Woodland (uncleared acreage)
 2.8708 acres at $1,100 per acre 3,157.88
Timber 806.00
 ____________
 TOTAL $164,737.78"

At the trial, the defendants' appraiser, Mr. John Mowad, testified that on the basis of recent comparable sales in the area, he estimated that the cleared farmland that was taken was of an estimated value of $2,100 per acre. The plaintiff's appraisers testified that in their opinion, the price per acre of the taken land was somewhat less based on recent sales of land from a larger area than that used by Mr. Mowad. Apparently, the trial court was convinced by Mr. Mowad's appraisal. A trial judge may give whatever weight he deems appropriate to the testimony of any and all witnesses in making his factual determination of the value of the property taken, and his fixing of the value will not be disturbed in the absence of manifest error. Southwest La. Elec. Membership Corp. v. Hargrave, 432 So.2d 1147 (La.App. 3rd Cir.1983); Louisiana Resources Co. v. Greene, 406 So.2d 1360 (La.App. 3rd Cir. 1981). After a careful review of the record we cannot say that the trial court was manifestly erroneous in its conclusion about the price per acre of the cleared farmland that was expropriated. The trial court heard the testimony of three appraisers and accepted the conclusion of one over the other two with respect to the value of the cleared farmland. This conclusion was not manifestly erroneous, therefore it will not be disturbed on appeal.
The next issue to be addressed is the trial court's award of severance damages. An owner is entitled to severance damages to the remaining property when only part is taken and damage results thereby to the remainder. This measure of compensation is the diminution in the value of the remaining property for sale or rental, determined by arriving at the value immediately before and after the expropriation. State, Dept. of Transp. and Develop. v. Taylor, 461 So.2d 1282 (La.App. 3rd Cir.1985), writ denied 464 So.2d 1382 (La. 1985). Severance damages must be shown to a reasonable certainty and must not be too remote or speculative for the mere possibility of severance damages is an insufficient basis for an award. City of Alexandria v. Jones, 236 La. 612, 108 So.2d 528 (1959). But on the other hand, the trial *103 court's factual findings as to severance damages in an expropriation proceeding and the weight given to the testimony of expert witnesses as the basis of this factual conclusion will not be disturbed on review absent a showing of manifest error. State, Through Dept. of Highways v. Wilson, 372 So.2d 632 (La.App. 1st Cir.1979); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
In its written reasons for judgment on the issue of severance damages, the trial court assigned the following observations:
"Prior to the taking, the subject property had been graded to provide drainage ditches into the Diversion Canal. The landowners had access to all of their drainage network for cleaning and maintaining same. The DOTD has cut the landowners off from their drainage network outlet. Crops will be damaged and the property made less valuable as farmland. In the future, the landowners may or may not be allowed to tie in to the highway drainage system to drain their fields. Even if they are allowed to drain into the highway system, the landowners will have to adequately grade their drainage structures so that water will not back up into the landowner's property. Because these landowners will have no access to either the lateral drain running alongside the road, the culverts running under the road or the ditches which go into the Diversion Canal, they will be completely without means to protect themselves from the clogging of those outlet drains. Aside from the drainage problem created by the taking, the Diversion Canal which served as a past and potential source of water to the subject property is now severed from the property. The presence or absence of water does make a piece of property of more or less value. The costs for the reconstruction of the cross drainage network located on the remaining Townsend property must also be considered."
"Also, after the taking, a seven acre triangular tract of land was completely cut off from access. The DOTD constructed a highway and fence along the long side of the triangle while the other two sides of the triangle are enclosed by a levee. There is no way of passage through the levee to the seven acre tract; it is not feasible to farm the seven acre tract with eight row equipment because of the angular shape and small size. In order to get use of the seven acres, the landowners had to bulldoze the levee and integrate those seven acres with the remainder of their field. Approximately 100 hours of work were necessary with a buldozed and operator at a cost of at least $60 per hour for a total of $6,000. This $6,000 item along with the other costs incurred by landowners because of this taking is included in the severance damages assessed by the court. An approximate 10% depreciation in the value of the property remaining is reasonable after considering all of the elements of severance damages. The court finds that an award of $57,449.70 for overall severance damages is adequate in this instance."
Again, in arriving at its conclusions regarding the diminished value of the farmland, the trial court apparently relied heavily on the testimony of Mr. Mowad, and to an extent on the testimony of the landowners themselves. The trial court's reasons are sound and justified. The severance damage award is supported by the record and after reviewing the record, we find no clear error on the part of the trial court. The severance damages were adequately proved to a legal certainty and this finding will not be disturbed on appeal.
The appellant's final assignment of error concerns the award of $100,000 for the loss of fill dirt which accumulated on the eastern bank of the Diversion Canal along the defendants' taken tract of land. The trial court held that this dirt had a value separate and apart from the value of the land taken. The appellant contends that the trial court erred in granting this additional element of damages because a servitude that was granted by the defendants to the State for the maintenance of the canal denied the defendants' ownership of this fill dirt. In the alternative, the appellant contends that the defendants did not adequately *104 prove the potential market, the worth or their intention to exploit this fill dirt, or that it should constitute an award in addition to the market value of the land.
On every expropriation, the owner must be compensated to the full extent of his loss; he must be placed in as good a position pecuniarily as he enjoyed prior to the taking. State Dept. of Highways v. Bitterwolf, 415 So.2d 196 (La.1982); Southwest La. Elec. Membership Corp. v. Hargrave, supra. In this case, there was extensive testimony regarding the quality of this fill dirt and its value on the open market. There was very little evidence however, concerning the feasibility of exploiting the dirt, or any intention by the defendants to exploit this dirt. In fact, only one witness, Mr. John Roland Fontenot, testified that he approached the defendants for the purpose of making an offer for this fill dirt. Mr. Fontenot, however, stated that the market for fill dirt was poor and that he, in fact, was unable to continue his business in dirt sales. Furthermore, it was established at the trial that this dirt had been on this bank for 30 years after it was placed there by the Levee Board and that no one other than Mr. Fontenot approached the defendants about the possibility of a purchase. Thus, we conclude that the defendants did not adequately prove that there was a market for this dirt or that they ever had any intention to exploit it. Consequently, the trial court's award of $100,000 for the loss of this dirt was a clear error, and is hereby reversed. State, Dept. of Transp. & Develop. v. Taylor, supra.
The appellant also contends that the servitude granted by the defendants to the Levee Board 30 years ago deprives the defendants of the right to exploit this dirt. We are unable to find a certified copy of this servitude in the record so we are unable to determine how it effects the defendants' rights vis-a-vis the fill dirt and compensation. Nevertheless, we find that the $100,000 award for the fill dirt was unjustified on other grounds. Accordingly, this portion of the trial court's judgment is reversed.
Accordingly, the compensation award for the tract's market value and the severance damages is affirmed as well as the award of attorney's fees and court costs. The award of $100,000 for the loss of the fill dirt is reversed. Thus the award sum is $222,187.48, subject to the credit of $129,271.00.
Pursuant to La.R.S. 48:453, the trial court awarded an attorney's fee of 25% of the difference between the amount deposited by the DOTD (129,271.00) and the amount ultimately awarded in compensation which has now been reduced on this appeal ($222,187.48). This award is authorized by statute when the amount awarded in compensation exceeds the amount deposited by the DOTD. Because the amount ultimately awarded exceeds the amount deposited by DOTD, the attorney's fee of 25% of $92,916.48 is justified in this case.
La.R.S. 48:455 authorizes legal interest in this case which runs from the date that title was vested in the DOTD (August 3, 1981) until payment is made. La.R.S. 48:455 however, limits the principal on which this interest can run to the difference between the amount awarded and the amount deposited which comes to $92,916.48. The trial court awarded this legal interest and was justified in doing so. It should be noted however, that this legal interest runs on the judgment alone ($92,916.48), and not on the sum of the judgment and the attorney's fee award. State, Dept. of Transp. and Develop. v. Taylor, supra.
For the foregoing reasons, the judgment of the trial court is affirmed in part and reversed in part. Costs of this appeal are to be borne equally between the parties.
AFFIRMED IN PART; REVERSED IN PART.

ON REHEARING
PER CURIAM.
This appeal from an expropriation suit is before us for a second time on an application *105 for rehearing. The facts of the case are set out in our decision in the original appeal of this matter, State v. James W. Townsend, 473 So.2d 99 (La.App. 3rd Cir. 1985).
The appellant now contends that certain exhibits showing that the expropriated land was burdened by a servitude, which diminished the value of the property, were absent from the record at the time the case was considered by this court on appeal, through no fault of the appellant. As a result, the appellant believes that the value of the expropriated land should be reconsidered in light of these documents.
The appellant admits in his application for rehearing that the record contains expert testimony with regard to the effect of a servitude. The trial court heard the expert testimony concerning the servitude and received the exhibits evidencing its existence.
We have now reviewed the exhibits at issue. We conclude that we cannot disturb our earlier ruling with regard to the trial court's findings. As we stated in that decision:
"At the trial, the defendants' appraiser, Mr. John Mowad, testified that on the basis of recent comparable sales in the area, he estimated that the cleared farmland that was taken was of an estimated value of $2,100 per acre. The plaintiff's appraisers testified that in their opinion, the price per acre of the taken land was somewhat less based on recent sales of land from a larger area than that used by Mr. Mowad. Apparently, the trial court was convinced by Mr. Mowad's appraisal. A trial judge may give whatever weight he deems appropriate to the testimony of any and all witnesses in making his factual determination of the value of the property taken, and his fixing of the value will not be disturbed in the absence of manifest error. Southwest La. Elec. Membership Corp. v. Hargrave, 432 So.2d 1147 (La.App. 3rd Cir.1983); Louisiana Resources Co. v. Greene, 406 So.2d 1360 (La.App. 3rd Cir.1981). After a careful review of the record we cannot say that the trial court was manifestly erroneous in its conclusion about the price per acre of the cleared farmland that was expropriated. The trial court heard the testimony of three appraisers and accepted the conclusion of one over the other two with respect to the value of the cleared farmland. This conclusion was not manifestly erroneous, therefore it will not be disturbed on appeal."
REHEARING DENIED.